## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

DAVID ALLYN, *et al.*

      Plaintiffs,

      v.

AMERICAN BOARD OF MEDICAL
SPECIALTIES, INC., *et al.*

      Defendants.

Case no. 5:18-cv-00355-JSM-PRL

---

## DEFENDANTS' MOTION FOR COSTS AND ATTORNEYS' FEES, OR, ALTERNATIVELY, FOR AN ORDER REQUIRING PLAINTIFFS TO POST A BOND

Russell LaPeer
**LANDT, WIECHENS, LaPEER, & AYRES LLP**
Florida Bar no. 200530
445 N.E. 8th Avenue
Ocala, Florida 34470
Telephone No.  (352) 732-8622
Facsimilie No.  (352) 732-1162
rlapeer@aol.com &
lawsec70@yahoo.com

Jack R. Bierig
Benjamin I. Friedman
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone No.  (312) 853-7000
Facsimile No.   (312) 853-7036
jbierig@sidley.com
benjamin.friedman@sidley.com

Admitted *Pro Hac Vice*

Pursuant to 28 U.S.C. § 1927 and this Court's inherent equitable authority, defendants American Board of Medical Specialties ("ABMS") and American Board of Dermatology, Inc. ("ABD") (collectively "defendants") move for sanctions against plaintiffs and their counsel. Defendants also respectfully request that the Court order plaintiffs to post a bond under Fla. Stat. § 502.211(c) in the amount of $250,000.

## INTRODUCTION

From the moment this case was filed, plaintiffs and their counsel have acted irresponsibly. The original *verified* complaint (ECF No. 1) included allegations that plaintiffs should have known were false. Specifically, plaintiffs alleged that "Defendant ABMS is set to vote on the creation of a subspecialty board for Mohs surgery board shortly after July 6, 2018" and that the three original plaintiffs "would not be able to qualify to become certified by the Mohs Surgery Board." Compl. ¶¶ 20, 23, 26, 209 (ECF No. 1). Plaintiffs' *verified* motion for temporary restraining order (which was filed before defendants were served) repeated these false allegations. ECF No. 2 at ¶¶ 20, 22, 77, 93.

If plaintiffs were not aware that these allegations were false (which is unlikely), the Court's Order denying plaintiffs' motion for a TRO removed any doubt by specifically identifying these errors. In addition, counsel for defendants brought these and other errors to the attention of plaintiffs' counsel and asked that plaintiffs withdraw or amend the Complaint to correct these allegations. However, plaintiffs refused. Bierig Dec. ¶¶ 6–8. Their refusal forced defendants to expend significant resources drafting and filing a motion to dismiss.

After that motion was filed and after their time to respond to the motion had expired, plaintiffs filed an Amended Complaint. But the Amended Complaint did not cure the factual

1

inaccuracies in the original Complaint. To the contrary, it exacerbated them – and added new allegations that were either irrelevant, baseless, or directed against clearly lawful conduct. *See* Motion to Dismiss, filed contemporaneously herewith. In short, the Amended Complaint unreasonably and vexatiously multiplies these proceedings, and the Court should sanction plaintiffs and their counsel under 28 U.S.C. § 1927 and its inherent equitable authority. If this action is permitted to proceed under Florida law, the Court should require plaintiffs to post a bond under Fla. Stat. § 502.211(c) in the amount of $250,000.

## BACKGROUND

On April 6, 2018, ABMS received an application from ABD for authorization to award subspecialty certification in Micrographic Dermatologic Surgery ("MDS"). Declaration of Richard E. Hawkins ¶ 6 ("Hawkins Dec.") (ECF No. 24). ABMS then sought comments from all interested parties. *Id.* As stated in ABMS's call for comments, which was posted on its website, ABMS's Committee on Certification ("COCERT") would consider the MDS subcertification application at its meeting on September 11, 2018. 7/12/2018 Order at 3 (ECF No. 5). Interested parties could submit comments on the application via ABMS's website until July 6, 2018. Hawkins Dec. ¶ 7. After that date and until September 7, 2018, interested parties could send comments via electronic or regular mail. *Id.* COCERT agreed to consider any comments received before the close of business on September 7, 2018. *Id.*

Nevertheless, on July 11, 2018, three Board certified dermatologists, David Allyn, James Lynott, and Joseph Masessa, filed a verified, eight-count Complaint against Defendants. ECF No. 1. The Complaint was littered with false allegations, including:

- ABMS was "attempt[ing] to create a subspecialty board (referred to herein as the 'Mohs Surgery Board')." Compl. ¶ 1. In fact, ABD submitted an application, which

requested authorization for it to issue a subspecialty certification. ABD has never requested that ABMS create a separate "subspecialty board."

- "Plaintiff Dr. Allyn has not had a fellowship in Mohs Surgery and would not be able to qualify to become certified by the Mohs Surgery Board." Compl. ¶ 20. In fact, because Dr. Allyn is Board certified in dermatology and practices MDS, he would be eligible for the MDS sub-certification via the practice pathway for five years after approval of the ABD application. ECF No. 1-3 at 8.

- "Plaintiff Dr. Lynott has not had a fellowship in Mohs Surgery and would not be able to qualify to become certified by the Mohs Surgery Board." Compl. ¶ 23. In fact, because Dr. Lynott is Board certified in dermatology and practices MDS, he would be eligible for the MDS sub-certification via the practice pathway for five years after approval of the ABD application. ECF No. 1-3 at 8.

- "Plaintiff Dr. Masessa has not had a fellowship in Mohs Surgery and would not be able to qualify to become certified by the Mohs Surgery Board." Compl. ¶ 26. In fact, because Dr. Masessa is Board certified in dermatology and practices MDS, he would be eligible for the MDS sub-certification via the practice pathway for five years after approval of the ABD application. ECF No. 1-3 at 8.

- "It is believed that Defendant ABMS and members of its board of directors will vote shortly after July 6, 2018, to create the new Mohs Surgery Board." Compl. ¶ 60. In fact, as stated on ABMS website, COCERT would not vote on ABD's application until September of 2018 and the ABMS Board of Directors would not act until late in October.

- "The proposed requirements to become a member of the Mohs surgery subspecialty board include, among others, a one (1) to two (2) year fellowship in Mohs surgery." Compl. ¶ 66. In fact, the application did not envision a "Mohs surgery subspecialty board" and any Board certified dermatologist that practices MDS would be eligible for the MDS subspecialty certificate for the first five years. ECF No. 1-3 at 8.

On the day that they filed suit, plaintiffs moved for a temporary restraining order without hearing and a "temporary injunction" ("Mot. for TRO") (ECF No. 2). Like the Complaint, plaintiffs' *verified* motion for TRO contained a number of false allegations, including:

- "Under the program proposed by Defendant ABD to Defendant ABMS, and expected to be approved by ABMS, in order to become board certified ion [sic]

3

Mohs surgery, a physician would be required to be: 1) Board certified in dermatology; 2) fellowship trained in [sic] an accredited Mohs surgery fellowship program; and 3) meet certain other requirements." Mot. for TRO ¶ 20. In fact, non-fellowship-trained dermatologists would be eligible for the MDS sub-certification for the first five years. ECF No. 1-3 at 8.

- "Under the rules of the Mohs Surgery Board as proposed by the Defendants, the plaintiffs would not be able to obtain certification in Mohs surgery." Mot. for TRO ¶ 22. In fact, the application did not call for a Mohs Surgery Board, and, as Board certified dermatologists that perform MDS, plaintiffs would be eligible for the MDS sub-certification. ECF No. 1-3 at 8.

- "In order to become a member of and be certified by the proposed Mohs Surgery Board, a physician would be required to have a separate fellowship in Mohs Surgery. This is regardless of the number of Mohs surgeries the physician had previously performed or the physician's actual clinical skills and experience in performing Mohs surgery." Mot. for TRO ¶ 34. In fact, the application did not call for a Mosh Surgery Board, and all non-fellowship-trained dermatologists that practice MDS would be eligible for the MDS sub-certification. ECF No. 1-3 at 8.

- "The proposed requirements to become a member of the Mohs surgery subspecialty board include, among others, a one (1) to two (2) year fellowship in Mohs surgery." Mot. for TRO ¶ 60. In fact, any Board certified dermatologist that practices MDS would be eligible for the MDS subspecialty certificate for the first five years. ECF No. 1-3 at 8.

- "The ABMS gave the public until July 6, 2018, to provide comments to the proposal made by the ABD to create a Mohs Surgery Board. With that period having expired it is expected that the ABMS will act on the application made by ABD in the very near future, and approve it." Mot. for TRO ¶ 93. None of this was true. ABMS gave the public until September 7, 2018 to provide comments. The public comment period therefore had not passed at the time this statement was made, and ABMS's COCERT was not going to consider the application until September 11, 2018. Indeed, the ABMS Board will not be acting on the application until October.

- "The injury alleged in the Verified Complaint and in this Verified Motion is so imminent that notice and a hearing on the application for preliminary injunction is impractical if not impossible." Mot. for TRO. ¶ 94. As explained above, at the time this statement was made, nearly two months remained in the comment period, and three months would elapse before there was any decision. Thus, notice and a hearing were both possible and practical.

On July 12, 2018, this Court denied plaintiffs' motion for a TRO, holding that plaintiffs

had not shown "that any harm is imminent or that there is a substantial likelihood of success on the merits." 7/12/2018 Order 1–2 (ECF No. 5). In reaching this decision, the Court "note[d] that the ABMS website refutes Plaintiffs' allegation" of imminent harm because "[t]he [ABMS] website states that the ABMS committee on certification, or COCERT, 'will consider the application . . . at its meeting in September 2018.'" *Id*. at 3 n.1. Plaintiffs also could not show a likelihood of success on the merits, according to this Court, because "Plaintiffs—who are all ABD board certified dermatologists—would not have to complete a fellowship to receive [MDS] certification, which is the crux of their claims in the Verified Complaint." *Id*. at 4–5. If plaintiffs had not previously been aware that the allegations identified above were false, the Court's order denying the TRO should have removed all doubt.

On July 13, not yet aware of this Court's denial of the TRO, counsel for defendants emailed George Indest, Carole Schriefer, and Lance Leider of The Health Law Firm, all of whom represent plaintiffs, to "advise[] that both the Complaint and Motion are filled with errors both with respect to the underlying facts and to the timetable at issue." Declaration of Jack R. Bierig ¶ 5 ("Bierig Dec.") (ECF No. 22). For example, defendants' counsel pointed out that, as the Court had previously observed and contrary to the verified allegations in the Complaint and motion for TRO, "ABMS is still accepting comments on the application of ABD to authorize it to grant subspecialty certification in Micrographic Dermatologic Surgery" and "[n]o final action will be taken on that application until October at the very earliest." *Id*. Accordingly, defendants' counsel respectfully requested that plaintiffs' counsel withdraw the Motion for TRO. *Id*.

Together with the Chief Legal Officer of ABMS, John Mandelbaum, defendants'

counsel, Jack Bierig, then spoke with Mr. Indest and his colleagues by telephone. Bierig Dec. ¶ 6. On that call, defendants' counsel reiterated these points and requested that both the Complaint and the Motion for a TRO be withdrawn without prejudice. *Id*. Defendants' counsel also stated that, in all the circumstances, defendants would seek sanctions if the Complaint were not withdrawn. *Id*.

On July 23, Mr. Mandelbaum and Mr. Bierig again spoke with Mr. Indest and his colleagues by phone. Bierig Dec. ¶ 8. During that conversation, defendants' counsel again advised counsel for plaintiffs that both the facts alleged in the Complaint and the timetable set forth in the Complaint and Motion for TRO were false. *Id*. Accordingly, defendants' counsel again requested that the Motion for Temporary Injunction and the Complaint itself be withdrawn, without prejudice. *Id*. Defendants' counsel again informed Mr. Indest and his colleagues that, if the Complaint were not promptly withdrawn, ABMS and ABD would seek sanctions, including an award of defendants' costs and attorneys' fees incurred in connection with a motion to dismiss that they would be filing. *Id*. Plaintiffs did withdraw their Motion for a Temporary Injunction, but they refused to withdraw the Complaint.

In light of plaintiffs' refusal to withdraw the Complaint, defendants moved to dismiss on grounds that plaintiffs' claims were unripe, that plaintiffs lacked antitrust standing, and that, in any event, plaintiffs had failed to allege facts that stated a cause of action. Defendants' motion to dismiss made two points that this Court had already made in denying the TRO: (1) ABMS would not imminently act on ABD's application to issue a subcertification in MDS; and (2) plaintiffs would be eligible for the MDS subcertification via the practice pathway. In addition, the Motion demonstrated both (1) that plaintiffs had alleged only injury to

themselves, not injury to competition and (2) that, in any event, plaintiffs had not alleged an actionable restraint of trade because the subspecialty certification that ABD proposed to offer did not involve any restraint at all. Rather than respond to these points, plaintiffs filed an Amended Complaint that presumably was intended to cure the deficiencies that both this Court and defendants had pointed out. As set forth in defendants' Motion to Dismiss the Amended Complaint, however, that Complaint did not cure those deficiencies, but rather served only to vexatiously prolong these proceedings.

## ARGUMENT

Plaintiffs' refusal to withdraw the Complaint after both this Court and defendants' counsel identified allegations that were patently false was irresponsible. This unjustified refusal has imposed substantial and needless costs on defendants. The law does not permit such abusive tactics. This Court should, therefore, sanction plaintiffs counsel under 28 U.S.C. § 1927 and sanction plaintiffs and their counsel under this Court's inherent equitable authority. Moreover, if this case is permitted to proceed, the Court should require Plaintiffs to post a bond under Fla. Stat. § 502.211(c).

## I.   THE COURT SHOULD AWARD COSTS AND ATTORNEYS' FEES AGAINST PLAINTIFFS' COUNSEL UNDER 28 U.S.C. § 1927.

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Under this statute, there are three requirements to the imposition of sanctions: "(1) an attorney must engage in 'unreasonable and vexatious' conduct; (2) such 'unreasonable and vexatious' conduct must 'multiply the proceedings'; and (3) the amount of the sanction cannot exceed the

costs occasioned by the objectionable conduct. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010). Each of these requirements is met here.

*First*, the conduct of plaintiffs has been "unreasonable and vexatious." The Eleventh Circuit has explained that conduct is unreasonable and vexatious, "when the attorney's conduct is so egregious that it is tantamount to bad faith." *Ambling & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d. 1230, 1239 (11th Cir. 2007). "The standard is an objective one turning 'not on the attorney's subjective intent, but on the attorney's objective conduct.'" *Norelus*, 628 F.3d at 1282. "[O]bjectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently." *Id.* Plaintiffs' counsel's conduct meets this standard. The Court's Order denying the TRO put plaintiffs' counsel on notice that the allegations in the Complaint were false or, at a minimum, legally deficient. Defendants' counsel also alerted plaintiffs' counsel to these issues via email and multiple phone calls. Yet, plaintiffs' counsel steadfastly refused to withdraw the Complaint to fix known errors.

*Second*, the actions of plaintiffs' counsel have also "multipl[ied] the proceedings." Had plaintiffs' counsel withdrawn the Complaint based on the errors identified by both the Court and defendants' counsel, defendants would not have had to incur the substantial costs of moving to dismiss that Complaint. Instead, after forcing defendants to brief a lengthy motion to dismiss, plaintiffs filed an Amended Complaint that repeated many of the same false allegations and included new allegations that are either irrelevant, without any basis in fact, or addressed against lawful conduct. Thus, defendants have had to incur the additional costs of a second motion to dismiss.

*Third*, defendants' requested sanction does not exceed the costs resulting from the conduct of plaintiffs' counsel. The attorneys' fees that defendants request are limited to the costs of preparing and filing the initial motion to dismiss, the motion to dismiss the Amended Complaint, and this motion for sanctions. Defendants would not have incurred these costs but for plaintiffs steadfast refusal to withdraw the original complaint and wait to see whether ABMS would approve the application of ABD. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017) (explaining that "[t]he complaining party . . . may recover 'only the portion of his fees that he would have paid but for' the misconduct."). For these reasons, the Court should, pursuant to 28 U.S.C. § 1927, require plaintiffs' counsel to pay the costs and attorneys' fees incurred by defendants in the preparation of both motions to dismiss and this motion for fees.[1]

## II.   THE COURT SHOULD INVOKE ITS INHERENT AUTHORITY TO AWARD COSTS AND ATTORNEYS' FEES AGAINST PLAINTIFFS.

Alternatively, this Court should use its inherent authority to sanction plaintiffs for their conduct to date. *See Peer v. Lewis*, 606 F.3d 1306, 1314–15 (11th Cir. 2010) ("[T]he inherent power of a court "'can be invoked even if procedural rules exist which sanction the same conduct,' for these rules are not substitutes for the inherent power."). This authority allows a court to "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Bad faith "is not limited to suits that are filed in bad faith . . . [it] also encompasses bad-faith acts . . . during litigation." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985).

---

[1] If the Court grants this motion, defendants will submit an itemized fee request so that the Court can determine the amount of any sanction.

This standard is met here. Even before the Complaint was filed, each of the three initial plaintiffs and their counsel would have known of the actual timetable for decision by ABMS on the application by ABD simply by calling ABMS or by going to the ABMS website. Moreover, as Board certified dermatologists that perform MDS, each of the three original plaintiffs should have known that they could qualify for the MDS subcertification for five years via the practice pathway. Notably, this Court was able to identify these errors simply by going on the ABMS website.

If that were not enough, counsel for defendants repeatedly brought the true facts to the attention of plaintiffs' counsel when they requested that the Complaint be withdrawn. In these circumstances, plaintiffs' refusal to withdraw the Complaint lacks any plausible justification. If plaintiffs had legitimate concerns about the creation of an MDS subspecialty certification, they could have submitted comments to ABMS – and then waited to see whether the ABD application would be approved. Rather than express their concerns through these legitimate channels, however, plaintiffs brought a suit that didn't satisfy Article III requirements and sought an injunction without a hearing based on a timeline that plaintiffs either knew or should have known were false. The Court should not tolerate such an abuse of its processes.

For these reasons, the Court should use its inherent authority to require plaintiffs and their counsel to pay defendants' costs and attorneys; fees for both motions to dismiss and for this motion.

III.    **THE COURT SHOULD REQUIRE PLAINTIFFS TO POST A BOND UNDER FLA. STAT. § 502.211(c).**

Plaintiffs' Amended Complaint brings a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 502.201 *et seq.* In any action brought under that

statute, "upon the motion of the party against whom such action is filed alleging that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment," the Court can "require the party instituting the action to post a bond in the amount which the Court finds reasonable to indemnify the defendant for any damages incurred, including reasonable attorneys' fees." Fla. Stat. § 502.211(c).

Plaintiffs' FDUTPA claims meet § 502.211(c)'s requirement that the action be frivolous or meritless. In fact, plaintiffs have failed to allege the very first element of any FDUTPA claim—a deceptive act by defendants. As courts in this district have explained, pleading a deceptive act or practice requires plaintiffs to "provide . . . a[] substantiating factual predicate . . . , such as what misrepresentations, concealments, acts, or omissions allegedly deceived them and the public" and to provide "support for their allegation that Defendants' acts caused confusion in the marketplace and negatively affected their customers." *Eli Research, LLC v. Must Have Info Inc.*, No. 2:13-CV-695-FTM-38CM, 2014 WL 4540110, at *9 (M.D. Fla. Sept. 11, 2014). The Amended Complaint does not identify a single statement, deceptive or otherwise, *attributable to ABMS or ABD*. There can be no dispute that pleading a FDUTPA claim based on deceptive statement without identifying such statement is frivolous

Plaintiffs FDUTPA claim against ABD fares no better. Rather than identify a statement that ABD made, plaintiffs identify two statements from "Unnamed Co-Conspirator" American College of Mohs Surgery, and conclusorily allege that "[t]hese same deceptive and misleading statements have been made *by Defendant ABD*." Am. Compl. ¶ 59 (emphasis added). This too is insufficient to state a claim. Plaintiffs must do more by alleging, *inter alia*, "a[] substantiating factual predicate . . . , such as what misrepresentations, concealments, acts, or omissions

11

allegedly deceived them and the public." *Eli Research, LLC*, 2014 WL 4540110, at *9. Plaintiffs have failed to allege this threshold requirement.

Moreover, even if the statements identified in the Amended Complaint were attributable to ABD, they would still not state a claim. Under the FDUTPA, a statement is actionable only if it "is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. This standard requires a showing of probable, not possible, deception," *Zlotnick*, 480 F.3d at 1284, and plaintiffs must provide "support for their allegation that Defendants' acts caused confusion in the marketplace and negatively affected their customers." *Eli Research, LLC*, 2014 WL 4540110, at *9. Under this standard, the ACMS statements identified in the Amended Complaint are not deceptive.

Under the heading "Why Choose a Fellowship Trained Mohs Surgeon," ACMS's website explains that patients may "want [their] skin cancer treatment to be performed with the highest standards of quality and competency," which, plaintiffs allege, implies that non-fellowship trained Mohs surgeons have lower quality standards and lesser competence. Am. Compl. ¶ 56(a). But plaintiffs ignore the next sentence, which explains that ACMS "is the only organization that requires its members to have successfully completed an extensive fellowship that requires at least one full year of training." ECF No. 26-2 at 1. It is undisputed that fellowship-trained physicians have undergone additional training that non-fellowship-trained physicians have not. Given this context, the statement identified in above does not "disparage" non-fellowship trained physicians; it simply highlights the additional training that ACMS members have undergone. And, importantly, there is nothing to suggest that an interpretation

of this statement that is arguably deceptive is "probable," instead of simply "possible." *Zlotnick*, 480 F.3d at 1284.

Accordingly, the Court should require Plaintiffs to post a bond in the amount of $250,000 to indemnify defendants for the attorneys' fees they will incur in defending this suit.[2]

## CONCLUSION

For the reasons set forth above, defendants respectfully request that this Court sanction plaintiffs and their counsel pursuant to 28 U.S.C. § 1927 and the Court's inherent authority by requiring them to bear defendants' costs and attorneys' fees. Defendants also respectfully request that the Court order plaintiffs to post a bond under Fla. Stat. § 502.211(c) in the amount of $250,000 if this case proceeds under FDUTPA.

Respectfully submitted,

Russell LaPeer
**LANDT, WIECHENS, LaPEER, & AYRES LLP**
Florida Bar no. 200530
445 N.E. 8th Avenue
Ocala, Florida 34470
Telephone No.  (352) 732-8622
Facsimilie No.  (352) 732-1162
rlapeer@aol.com &
lawsec70@yahoo.com

By: */s/ Jack R. Bierig*
Jack R. Bierig
Benjamin I. Friedman
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone No.  (312) 853-7000
Facsimile No.   (312) 853-7036
jbierig@sidley.com
benjamin.friedman@sidley.com

Admitted *Pro Hac Vice*

Dated: September 24, 2018

---

[2] Alternatively, defendants request that this Court hold an evidentiary hearing to consider the propriety of a bond under § 502.211(c).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record in this case.

      */s/ Jack R. Bierig*

Jack R. Bierig
Benjamin I. Friedman
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone No.  (312) 853-7000
Facsimile No.   (312) 853-7036
jbierig@sidley.com
benjamin.friedman@sidley.com

Admitted *Pro Hac Vice*