**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**Ocala, Florida**

DAVID ALLYN, M.D.,
JAMES V. LYNOTT, M.D.,
JOSEPH M. MASESSA, M.D.,
JEFFREY BAUER HORTON, M.D., J.D.,
and MONT JAY CARTWRIGHT, M.D.,                    **No.:** 5:18-cv-355-Oc-30PRL

        Plaintiffs,

vs.

AMERICAN BOARD OF MEDICAL
SPECIALTIES, INC., etc., et al.,

        Defendants.
_____/

### DECLARATION OF DAVID ALLYN, M.D., IN SUPPORT OF PLAINTIFFS'

### RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

    I, David Allyn, M.D., having been duly sworn, do hereby declare and state as follows:

    1.    My name is David Allyn, M.D. I am a medical doctor licensed in the state of Florida. I am also board certified in the medical specialty of dermatology by the American Board of Dermatology, Inc. I reside in and practice medicine in Clermont, Florida.

    2.    I am one of the named Plaintiffs in the action against the American Board of Medical Specialties, Inc. ("ABMS"), and the American Board of Dermatology, Inc. ("ABD") captioned above.

    3.    During February 2018, I attended the American Academy of Dermatology Annual Meeting in San Diego, California. While there, I bumped into Brett M. Coldiron, M.D., one of the unnamed co-conspirators in this lawsuit, on Sunday, February 18, 2018, at about 4:15 P.M. in the hallway of the convention center where the meeting was taking place.

    4.    I have known Dr. Coldiron for many years and he knows me. I remember this date and this encounter vividly. I saw him only because I was running late to one of my sessions entitled "Hands-on: The Patient Encounter: Total Body Skin Exam." As a result of my meeting

and speaking with Dr. Coldiron, I missed this session completely.

5.    I knew that Dr. Coldiron was previously the president of the American Academy of Dermatology from 2014 to 2015 and was on the Board of Directors for it.  He was also president of the American College of Mohs Surgery from 2011 to 2012 and had been an officer or member of the Board of Directors of that organization from 2005 through 2012.  He has been very influential in advocating for and attempting to obtain passage of the American Board of Dermatology's application for a medical subspecialty in Micrographic Dermatological Surgery ("MDS") or Mohs Surgery.

6.    On February 18, 2018, Dr. Coldiron and I had a somewhat lengthy discussion regarding the application by the American Board of Dermatology (ABD) to the American Board of Medical Specialties (ABMS), to have a subcertification or subspecialty program in Micrographic Dermatologic Surgery.  Dr. Coldiron said to me that once the subcertification was approved by the ABMS, the American College of Mohs Surgery (ACMS) (a private organization with which he is affiliated), would then be able to exercise total control over the Mohs surgery procedure together with the American Board of Dermatology.

7.    I was somewhat dismayed by Dr. Coldiron's attitude and zeal for this to happen and attempted to explain how this would negatively affect not only myself, but also nondermatologists who performed Mohs Surgery.  I expressed my concerns to him that this plan of theirs would have a detrimental impact on my own ability to perform Mohs surgery and for patient access to this treatment in the future.

8.    However, Dr. Coldiron kept telling me about how he and the others had been working vigorously to obtain what he called "birth control for Mohs surgery."  He explained to me, very passionately, that he and others, including Dr. Roenigk and the American College of Mohs Surgery, had been working together for many years to achieve their plan, or "campaign" as he called it, to take complete control over who was allowed to perform Mohs surgery.

9.    I also know Dr. Roenigk, one of the other unnamed co-conspirators in this lawsuit.  He has been a "member" of, or otherwise very active with, the ABMS for more than ten (10) years now and possibly longer.  Dr. Roenigk is presently the Assistant Executive Director of the American Board of Dermatology and is a member of the American College of Mohs Surgery.  He also ran the Mayo Clinic ACMS Fellowship Program in Mohs Surgery for many years.  I know Dr. Roenigk is a member of the Committee on Certification (COCERT) of the ABMS and would have the ability to influence the approval by ABMS of the ABD's application for the subspecialty certification.

10.    During our discussion, Dr. Coldiron went on to say that if he and the others were successful in their plan, the Mohs surgery procedure would then be limited and only a few dermatologists would be authorized to perform it.  He emphasized that the plan they had was to exclude most dermatologists and all other medical specialists, including plastic surgeons, from

being authorized to perform Mohs surgery in the United States now and in the future.

11.   During the conversation, Dr. Randall K. Roenigk's name came up several times as the individual who has been working behind the scenes for many years with Dr. Coldiron, the ABMS, the ACMS, and the ABD, to accomplish their plan and to ensure control of the procedure. During my conversation with Dr. Coldiron, he did confirm Dr. Roenigk's key role in this plan.

12.   Dr. Coldiron used the term "birth control for Mohs Surgery" a number of times, in describing how he and the others would be able to cut off and prevent other physicians from being able to perform Mohs surgery once the plan was successful and the ABMS had approved the subspecialty.   Dr. Coldiron is well known for using this phrase.

13.   I want to make it clear that Dr. Coldiron was describing to me a plan and actions that he and others had been taking for several years before this time, February 2018, to monopolize the Mohs surgery procedure.  By the phrase "birth control for Mohs surgery" I understood Dr. Coldiron to be using this term as a metaphor for obtaining a monopoly over Mohs surgery.  However, it was also clear from what he explained to me that he and the others were attempting to take complete control over the Mohs surgery procedure.

14.   If Dr. Coldiron, Dr. Roenigk, and the American Board of Dermatology are successful in their plan, this will cause a great deal of economic damages to me.  I expect that I will lose, at the very least, $100,000 per year in medical fees.   Other physicians currently performing Mohs surgery will also lose large amounts of medical fees.   However, more importantly, the access of patients to this important cancer treatment will be artificially limited. Physicians will be artificially prevented from competing with the Mohs surgeons approved by the ABD in providing these services throughout the U.S.

15.   Independently from the above, I know that in or around 2004, the American Board of Dermatology (ABD), proposed a subspecialization program and certification in pediatric dermatology.   The proposal was somewhat similar to the one that has been presented to the American Board of Medical Specialties (ABMS) for a new subspecialty and certification in MDS.

16.   In or around 2004, the ABMS approved the creation of a subcertification in pediatric dermatology, administered by the ABD and under its control.

17.   In order to obtain support from many general dermatologists such as me, the ABD, in its proposal for the certification program in pediatric dermatology, included certain "grandfathering" provisions promising to "grandfather" in dermatologists such as me, who had experience treating pediatric patients, if we applied.

18.   The proposal by the ABD for the certification program in pediatric dermatology, like the present one for Mohs surgery or MDS, promised that board certified dermatologists who had some experience in treating pediatric patients would be "grandfathered in" and allowed to

apply for and take the examination to become certified in the subspecialty for a period of five (5) years.

19.     Because of this promise made by the ABD in its application for the pediatric dermatology subspecialty, which was approved by the ABMS, dermatologists such as me supported it.

20.     However, after the application was adopted by the ABMS and dermatologists such as me started applying to become certified in the new subspecialty, we were prevented from doing so by the ABD.

21.     We were informed by the ABD that the requirement was actually that "more than fifty percent (50%) of our practice" had to be in pediatric dermatology in order to qualify and be "grandfathered in." The "grandfathering" experience, according to the ABD, required documentation of at least five (5) years of clinical practice that included at least 50% children.

22.     This was completely different from what we were told before the ABD's application was approved. Dermatologists such as me, who had a large portion of pediatric patients, but who did not have more than fifty percent (50%) of our practice in pediatric dermatology, were not allowed to be "grandfathered in."

23.     My concern now is that the application made by the ABD for a Mohs surgery subspecialty contains almost identical language to that of its prior application for a pediatric dermatology subspecialty. My concern is that the ABD, once its application for a Mohs surgery subspecialty is approved by the ABMS, will then prohibit dermatologists such as me from being "grandfathered in" and being allowed to apply for and obtain subspecialization in Mohs surgery, by an arbitrary interpretation of what constitutes "prior experience" in Mohs surgery or MDS.

24.     My concern is that the ABD will use a similar tactic after the approval of and creation of the subcertification in Mohs surgery or MDS. My concern is that the ABD, consistent with its prior practice, will arbitrarily adopt a requirement for "grandfathering" experience so high that dermatologists such as me will not be able to meet it and be "grandfathered in" to qualify to become certified or take the examination.

25.     I am familiar with the letter from the American Board of Dermatology dated July 18, 2018 [Doc. 32-2], prepared after we filed our law suit in this case. To me it is an obvious attempt by the ABD, the ABMS and the other Unnamed Coconspirators, including Dr. Coldiron and Dr. Roenigk, to undercut our case without actually ending their antic-competitive conduct. A close reading of the letter shows that it does not document any actions that have been taken or which shall actually be taken in the future. Furthermore, it addresses only board certified plastic surgeons and otolaryngologists. It completely omits physicians in other medical specialties who are currently performing Mohs surgery, such as general surgeons, ophthalmologists and oncologists, who are competitors of the Defendants.

26.    Furthermore, the ABD's application for a subspecialty in MDS on its face does not allow plastic surgeons, ophthalmologists, surgical oncologists, otolaryngologists (ENTs), and those other physicians who are not already board certified in dermatology, to even apply for such subspecialty certification, under any circumstances, no matter how experienced they are in MDS.

27.    From what I have observed, the pending application by the ABD for the subspecialty in MDS, is only the latest of many actions that have been taken in the past by the ABD, Dr. Coldiron, Dr. Roenigk, the ACMS, and others, to carry out a comprehensive plan to monopolize the performance of Mohs surgery or MDS in the U.S.

28.    Their past actions, continuing through the present, appear to be for the purpose of further reducing the number of board certified dermatologists, who can become certified in Mohs surgery or MDS.

29.    Their past actions, continuing through the present, also appear to be for the purpose of completely preventing those physicians who are in other medical specialties, such as plastic surgeons, ophthalmologists, surgical oncologists, otolaryngologists (ENTs), from becoming certified in Mohs surgery or MDS and from being able to perform it.

30.    Their past actions, continuing through the present, appear to be for the purpose of further reducing the number of their competitors solely for monetary gain.

31.    I am a person over 18 years of age, of sound mind, and competent to make this statement.  I have personal knowledge of the facts stated herein.

_____
Signature
**DAVID ALLYN, M.D.**


**STATE OF FLORIDA        )**
                                          **)**
**COUNTY OF SEMINOLE )**


## NOTARIZATION

The foregoing was sworn to and subscribed before me, an officer duly authorized in the State of Florida, to take oaths and acknowledgments, by David Allyn, M.D., the same either

personally known to me or who produced satisfactory identification and who did take an oath. Done this 18th day of October 2018.



ACHAL A. AGGARWAL
Commission # GG 169483
Expires December 19, 2021
Bonded Thru Troy Fain Insurance 800-385-7019

_____
Notary Public
Print Name: _Achal Aggarwal_
My Commission Expires: _12/19/2021_

(Stamp/Seal)

GFI/AAA/
S:\001-1699\002\002-ABMS Antitrust Suit\550-DOCS WE PREPARED\Allyn Declaration-1E.wpd

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have filed this document electronically with the Clerk of Court via the CM/ECF System, which automatically serves all counsel of record, on this 19th day of October 2018.

/s/ George F. Indest III

_____
GEORGE F. INDEST III, J.D., M.P.A., LL.M.
Florida Bar No.: 382426
Primary e-mail: GIndest@TheHealthLawFirm.com
Secondary e-mail: CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
THE HEALTH LAW FIRM
1101 Douglas Avenue
Altamonte Springs, Florida 32714
Telephone: (407) 331-6620
Telefax: (407) 331-3030
ATTORNEYS FOR PLAINTIFFS