IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Ocala, Florida

DAVID ALLYN, M.D.,
JAMES V. LYNOTT, M.D.,
JOSEPH M. MASESSA, M.D.,
JEFFREY BAUER HORTON, M.D., J.D.,
and MONT JAY CARTWRIGHT, M.D.,     No.: 5:18-cv-355-Oc-30PRL

      Plaintiffs,

vs.

AMERICAN BOARD OF MEDICAL
SPECIALTIES, INC., an Illinois corporation,
and AMERICAN BOARD OF DERMA-     Response in Opposition to Defendants'
TOLOGY, INC., a Delaware corporation,     Motion for Sanctions [Doc. 33]
authorized to do business in Massachusetts,

      Defendants.
_____/

PLAINTIFFS' VERIFIED RESPONSE IN OPPOSITION TO

DEFENDANTS' MOTION FOR COSTS AND ATTORNEY'S FEES [DOC. 33]

    COME NOW Plaintiffs in the above-referenced matter, by and through their undersigned counsel, and file this Verified Response in Opposition to Defendants' Motion for Costs and Attorney's Fees . . . [Doc. 33], stating:

BACKGROUND FACTS

    1.      On July 11, 2018, Plaintiffs filed their original Verified Complaint [Doc. 1], which was served on Defendants on July 18, 2018.

    2.      On August 22, 2018, Defendants filed a Motion to Dismiss the Complaint [Doc. 21].

3. On September 10, 2018, as permitted by Rule 15(a)(1)B, Federal Rules of Civil Procedure, Plaintiffs filed an Amended Complaint [Doc. 26].

4. On September 24, 2018, Defendants filed a Motion to Dismiss the Amended Complaint [Doc. 31].

5. September 24, 2018, Defendants also filed a Motion for Costs and Attorney's Fees, or Alternatively, for an Order Requiring Plaintiffs to Post a Bond [Doc. 33] ("Motion"), pursuant to the "Court's inherent authority" and 28 U.S.C. § 1927, without having previously served Plaintiffs with an advance copy of the motion.

6. Plaintiffs and their counsel file this Response in Opposition to said Motion [DOc. 33], believing that the Motion itself is filed in bad faith and in an attempt to intimidate Plaintiffs into dropping their meritorious suit.

7. Neither Plaintiffs nor their counsel acted irresponsibly or with intent to "needlessly multiply" the litigation. In fact, it was the acts of the Defendants that forced this litigation to be filed.

8. Plaintiffs' counsel acted on the facts as they were presented to it in what appeared, at the time, to be an impending decision warranting swift action.

9. Despite Defense Counsel's sworn statements, Defendants were presented with options which could have allowed them to avoid some of the costs they claim were needlessly incurred in defense of this action.

10. Despite those actions, Defendants and their counsel voluntarily chose to adopt a litigation strategy irrespective of the opportunities offered to them by Plaintiffs and their counsel. Consequently, any of the wounds Defendants claim to have suffered were largely self-inflicted.

11. Undersigned counsel, apparently unlike counsel for Defendants, Jack Bierig, Esquire, understands the need to zealously represent one's client. As a matter of professional courtesy undersigned counsel has not filed a reciprocal motion for sanctions against Mr. Bierig and his colleagues, even though undersigned counsel and the Plaintiffs believe that Mr. Bierig's Motion [Doc. 33] is frivolous, without merit and filed in bad faith.

WHEREFORE, Plaintiffs respectfully request the Court enter an Order denying Defendants' Motion [Doc. 33].

## MEMORANDUM OF LAW

I. <u>The 28 U.S.C. § 1927 Standard</u>

In order to impose sanctions under 28 U.S.C. § 1927, Defendants must prove Plaintiffs exhibited "bad faith or vexatiousness in the filing of an unsupported claim." *Moore v. Western Surety Co.*, 140 F.R.D. 340, 349 (N.D. Miss. 1991). An award of attorney's fees should only be granted following conduct "of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *Sherman Treaters Ltd. v. Ahlbrandt*, 115 F.R.D. 519, 524-25 (D.D.C. 1987).

In the Eleventh Circuit, there are three (3) requirements to justify §1927 sanctions:

(i) an attorney must engage in "unreasonable and vexatious" conduct;

(ii) such "unreasonable and vexatious" conduct must "multiply the proceedings; and

(iii) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct.

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).

An attorney only multiplies court proceedings unreasonably and vexatiously when the attorney's conduct is so egregious that it is tantamount to bad faith. *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991). The standard is an objective one, not turning on the attorney's intent but on his objective conduct. *Id.* The question then becomes one of how would a reasonable attorney have acted in the same or similar circumstances.

Sanctions should only be imposed where the action is one that a competent attorney could not, under any conceivable justification, reasonably believe is not frivolous. *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987).

II.     <u>Plaintiffs and Their Counsel Conducted Themselves in Good Faith</u>

Much of Defendants' argument in their Motion [Doc. 33] focuses on the initial Complaint and the Motion for Temporary Restraining Order filed by Plaintiffs on July 11, 2018. While it may be true there were certain factual inaccuracies in the Complaint which were repeated in the Motion for TRO, Mr. Bierig materially misrepresented to the Court the events that transpired between counsel for the parties.

Mr. Bierig characterizes his interactions with the undersigned as much shouting into the wind. The "shouting" part of that statement is correct. Specifically, Mr. Bierig frames his interactions with Plaintiffs' counsel as the giving of umpteen warnings with no response or movement from the other side. This is simply not true.

From the very beginning, Mr. Bierig's demand was that the Plaintiffs must withdraw their suit immediately, and threats were made including threats for sanctions, if Plaintiffs did not do so.

Counsel for Defendants would not consider anything less or any other alternative.

Counsel for the parties conducted a telephone conference on July 23, 2018. During that call, Mr. Bierig stated his clients' disagreements with some of the factual allegations in the Complaint and asked that it be withdrawn. Contrary to Mr. Bierig's characterization, that request was <u>not</u> met with wholesale disregard as he misrepresents to the Court. However, Mr. Bierig's overall attitude and tone was one of bullying and threatening, thus undercutting any credibility that his arguments may have otherwise held. Mr. Bierig demanded, in no uncertain terms, that the Plaintiffs' Complaint be withdrawn "immediately."

The undersigned advised Mr. Bierig that he would consult with his clients, the named Plaintiffs, and would advise them of Mr. Bierig's statements and threats, including the threat of sanctions and attorney's fees, and would advise them accordingly.

In subsequent telephone conferences with counsel for the Defendants, Mr. Bierig pressed on with his quest to have the Complaint "immediately" and re-filed at a later dated, only after the Defendants had completed their pending actions to approve and implement the pending Mohs Surgery subcertification application and program.

In response, counsel for Plaintiffs advised Mr. Bierig that its clients did not want to withdraw the Complaint and re-file, but they would agree to abate the proceedings until after the decision. Mr. Bierig conveniently failed to advise the Court of this offer made by the Plaintiffs, understandably so, as such an offer would mitigate the entirety of the fees Mr. Bierig seeks to recover in his Motion. After all, had the case been abated and Defendants not approved the subcertification, Plaintiffs' suit may very well have been moot, or at least no longer worth pursuing.

Throughout the telephone conference between counsel, the undersigned offered to further investigate the alleged inaccuracies and amend the Complaint as necessary. However, Mr. Bierig, ever the hard-nosed litigator, continually responded to the undersigned's reasonable offers with the hackneyed "You do what you have to do and I'll do what I have to do" (or words to that effect). Unfortunately for Mr. Bierig's clients, he did not "have to" do any of that for which he now seeks to recover his surely substantial fees.

Undersigned did consult with his clients, the named Plaintiffs, advising them of Mr. Bierig's statements and threats. As a result Plaintiffs agreed to authorize undersigned counsel to file an Amended Complaint that corrected many of the factual allegations with which Mr. Bierig had voiced his disagreement. As a result, with Mr. Bierig's assistance and corrections, Plaintiffs filed an Amended Complaint (without being dismissed or withdrawn), correcting any factual inaccuracies and stating a much more solid action for various causes of action including attempted monopolization of the market and restraint of trade. The Amended Complaint now, thanks to the insistence of Mr. Bierig, should be a comprehensive and well-pleaded complaint, withstanding his frivolous motion to dismiss.

It is worth noting that the Motion [Doc. 33] <u>does not include any direct references to portions of the Amended Complaint</u> which constitute "false allegations." These were all voluntarily corrected by the Plaintiffs, as demanded by Mr. Bierig, in their Amended Complaint. In fact, there are no "false allegations" in the Amended Complaint. Instead, Mr. Bierig points only to the legal grounds that he raised in his Motion to Dismiss the original Amended Complaint.

Throughout the various telephone conferences held between and among counsel for th parties, Mr. Bierig seemed not be aware of Rule 15(a)(1)B, Federal Rules of Civil Procedure,

which allowed Plaintiffs to filed an Amended Complaint correcting and amending both facts and causes of action pleaded in the original.

Defendants in their Motion make much of the fact that the Court, in the Order [Doc. 5] denying the Plaintiffs' Motion for Temporary Restraining Order [Doc. 2], identified a deficiency in Plaintiffs' preliminary pleadings. Indeed, Mr. Bierig hangs his hat firmly on the language in the Court's preliminary Order [Doc. 5]. However, this completely overlooks the fact that this was a preliminary ruling on a preliminary motion which the Court, in footnote 2 of its Order [Doc. 5, p. 5, n. 2], specifically stated was denied without prejudice to the Plaintiffs being able to correct or clarify it in the future.

However, the denial of the Motion for TRO and any flaws it may have highlighted do not amount to "bad faith."

Defendants allege that despite the apparent signal given by the Court, "plaintiffs' counsel steadfastly refused to withdraw the Complaint to fix known errors." [Doc. 33, p. 9]. Such an assertion is objectively false and borders on the kind of bad faith conduct Mr. Bierig so loudly rails against. It also, once again, ignores Rule 15(a)(1)B, Federal Rules of Civil Procedure.

Plaintiffs are not required to withdraw their complaint merely because Mr. Bierig tells them to do so; however, they are required to follow the Federal Rule of Civil Procedure, which they did.

III.   Plaintiffs' Counsel's Conduct Does Not Meet the § 1927 Standard for Sanctions

As mentioned above, Plaintiffs advised defense counsel that they would amend the Complaint or offer to abate the proceedings to assuage Defendants. Those offers were

"steadfastly" refused. Furthermore, Defendants seem to be of the position that withdrawing the Complaint, re-working it, and then re-filing it was the only way to proceed in good faith. However, a party may amend the Complaint once as a matter of course. Pursuant to Rule 15, a party may amend a pleading as a matter of course within twenty-one (21) days after service of a motion under Rule 12(b), (e), or (f). Rule 15, Fed. R. Civ. P. Defendants served their first Motion to Dismiss on August 22, 2018, and Plaintiffs filed the Amended Complaint on September 10, 2018, only nineteen (19) days later and within the time frame permitted by the rules.

Even assuming Plaintiffs were not within their rights to file the Amended Complaint (which they obviously were), the facts of this case pale in comparison to the kinds of cases where Courts have awarded fees under 28 U.S.C. § 1927.

First, from a purely reason-based perspective, it is totally illogical to conclude that Plaintiffs' correction of alleged factual errors and pleading errors through the filing of an Amended Complaint, rather than withdrawing and refiling at a later date, constitutes conduct that is "so egregious that it is 'tantamount to bad faith.'" *Bauman v. Publix Supermarkets, Inc.*, 2018 U.S. Dist. LEXIS 10288 (N.D. Ga. Jan. 23, 2018) (quoting *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).

In *Bauman*, the Plaintiff's counsel filed suit under ERISA prior to exhausting his administrative remedies, a total bar to suit under the act. *Bauman*, 2018 U.S. Dist. LEXIS at *6-7. Following summary judgment in favor of the defendants, they brought a claim for § 1927 attorney's fees. The Northern District of Georgia found Mr. Bauman's suit was, if anything, was only negligently brought by his attorney, thus not warranting any award of fees. Id.

Likewise, assuming for the sake of argument only that Mr. Bierig's claims are true that Plaintiffs' claims were brought when they were procedurally barred (a concession the Plaintiffs do not make), the undersigned, under *Bauman*, is, at worst, negligent.[1] Negligent conduct alone is insufficient to show bad faith. *Id.*

For sanctions under § 1927 to be appropriate, something more than a lack of merit is required. *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). "The statute was designed to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith." *Avirgan*, 932 F.2d at 1582 (11th Cir. 1991). Bad faith exists when an attorney knowingly and recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the resolution of non-frivolous claims. *Schwartz*, 341 F.3d at 1225-26.

Even viewed under a light *least* favorable to the undersigned, it can hardly be said that the conduct in this case has been equivalent to the reckless pursuit of a frivolous claim. Even if there were material and fatal errors in the initial Complaint, those errors were remedied in the Amended Complaint, properly filed in accordance with Rule 15(a)(1)B, Federal Rules of Civil Procedure.

Furthermore, even if Plaintiffs had not filed the Amended Complaint, Plaintiffs offered Defendants the opportunity to avoid the litigation costs they complain of by abating the case until subcertification decision was final. Defendants refused.

The facts of the Motion and of this case do not disclose any conduct approaching the abuses of process § 1927 was meant to dissuade and remedy. Take for example *Amlong & Amlong*.

---

[1] Undersigned counsel wants to be clear that this is a "worst case scenario" argument used to emphasize the facts of this case as compared to other existing cases. Undersigned counsel does not contend for an instant that undersigned counsel or the Plaintiffs were negligent in any respect.

*Amlong* involved the type of willful and wanton conduct which warranted sanctions.

In *Amlong*, the subject attorneys pressed on with litigating a case where all objective and reasonable factors pointed to the inescapable conclusion that their client's claims were fabricated. *Amlong & Amlong, P.A.*, 500 F.3d at 1239. Not only did the attorneys press on with the case, they filed a sixty-three (63) page errata sheet detailing a total of nearly nine hundred (900) changes to the client's deposition testimony. The 11th Circuit concluded that no reasonable attorney would have pressed on with the case knowing that the only source of evidence, their client's testimony, was so hopelessly eviscerated and that she was likely lying. *Id.* Here, in contrast, Plaintiffs offered to abate the case and/or amend the Complaint to address the issues raised by the Court and Defendants. And, in the present case, no discovery of any kind has occurred and each side has accumulated very little in the way of attorney's fees and costs.

Another example of the kind of conduct which warrants § 1927 sanctions was in *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536 (11th Cir. 1993). In *Malautea*, the sanctioned attorneys deliberately participated in a cover-up of damaging evidence, willfully failed to comply with two discovery orders to produce documents, filed a multitude of unfounded and unreasonable discovery objections, and provided incomplete answers to other discovery all in an attempt to obfuscate the truth. *Id.* at 1544. Neither Plaintiffs nor their counsel engaged in conduct even remotely comparable.

Although it is unclear, Defendants seem to argue that the Amended Complaint is also without any legal justification whatsoever and that its mere filing is something no reasonable lawyer would ever have done. Not only is that an absurd premise, <u>it is directly contradicted by the legal precedent cited by Plaintiffs in their Response in Opposition to the Motion to Dismiss</u>

the Amended Complaint.

To the extent Defendants claim the Amended Complaint is patently without merit, Plaintiffs and the undersigned hereby incorporate by reference the arguments made in their Response in Opposition to Defendants Motion to Dismiss the Amended Complaint filed contemporaneously herewith.

IV.   The Court Should Refrain From Imposing Sanctions Against Plaintiffs

Defendants urge the Court to exercise its inherent authority to issue sanctions for abuse of process. The complained of conduct is exactly the same as that which it relied upon in its request for § 1927 sanctions. Namely, that Plaintiffs, as ABD certified physicians performing Mohs surgery, could apply to be certified through the practice pathway. As is stated in the Amended Complaint and the Response in Opposition to the Motion to Dismiss the Amended Complaint, there are other considerations at bar besides the mere availability of a practice pathway. There are members of the plaintiff class who are not ABD certified physicians and who would not be allowed to apply for or become certified in Mohs Surgery by the Defendants under any circumstances. There are true questions of law as to the propriety of the subcertification in the first instance. There are questions as to whether the conduct of Defendants long prior to the subcertification procedures was unlawful and in restraint of trade.

As much as Defendants would have the Court believe they and their counsel are innocent bystanders in all of this, the fact remains that Plaintiffs gave them the opportunity to abate the action or wait for the Complaint to be amended. Defendants and their ivory tower law firm eschewed the opportunity to manage their expenses and engaged in what turned out to be frivolous

motions practice. Certainly, Defendants' conduct was well within their rights, and may have even made sense from a strategy standpoint. It does not, however, render Plaintiffs' conduct as bad faith.

Defendants delivered an ultimatum: "Withdraw the Complaint or else." Just because Plaintiffs took the "or else" option does not automatically make it sanctionable. All of the cases cited by Defendants in their Motion [Doc. 33] point to truly egregious behavior by the litigating attorneys. Not a single one contains a constellation of facts that is even in the same universe as that which is alleged to have transpire in this case.

In fact, Plaintiffs believe that the actions they have taken to date have been both restrained and reasonable under the circumstances.

V.      Plaintiffs Should Not Be Required to Post Bond on their FDUTPA Claim

Defendants argue that Plaintiffs should be required to post a bond to continue their FDUTPA claims because such claims are frivolous or without legal merit. [Doc. 33, at p. 12].[2] Specifically, Defendants allege the Amended Complaint fails to allege a deceptive act by Defendants, ABMS or ABD. *Id.*[3]

---

[2] Defendants cite § 502.201 et seq. as the operative statutory section. However, Chapter 502, Florida Statutes, has to do with the regulation of Milk, Milk Products, and Frozen Desserts. Although Mohs surgery involves freezing human tissue, it is, presumably at least, not for the purposes of frozen confectionaries.

[3] Defendants again point to what seems to be the wrong statutory section. Section 502.211(c), Florida Statutes, does not exist. One would assume Defendants meant Section 501.211(c), Florida Statutes, since Chapter 501, Florida Statutes, contains the FDUTPA. But again, one would be incorrect since there is no subsection (c) in Section 501.211, Florida Statutes. Defendants must then have meant Section 501.211(3), Florida Statutes.

Paragraphs 55-64 of the Amended Complaint contain a number of statements made by the the American College of Mohs Surgery (ACMS) that Plaintiffs identified as defamatory and false. Plaintiffs also alleged that Defendants ABMS and ABD are in league with and conspiring with ACMS to restrain trade vis-a-vis the restriction of the market for skin cancer surgery. Plaintiffs also alleged in paragraph 59 of the Amended Complaint that the false and defamatory ACMS statements were repeated in the public by Defendant ABD.

Plaintiffs aver the allegations in paragraphs 55-64 of the Amended Complaint are insufficient to meet the threshold requirements of FDUTPA. Specifically, Plaintiffs claim the Amended Complaint fails to lay the necessary factual predicate identifying the misrepresentations that deceived Plaintiffs and the public. In this respect, the Court is also requested to review the Declaration of David Allyn, M.D., filed contemporaneously herewith and incorporated by reference. It contains additional facts and statements that shed light on this matter.

Defendants apparently misapprehend the law. Not only does paragraph 59 of the Amended Complaint specify the precise nature of the false and defamatory statement, it states the manner in which Defendants ABD and ABMS published it and the purpose of its publishing. Paragraph 59 identifies the ABD's application for subcertification as the location of the statement. Paragraph 59, albeit impliedly, also identifies the alleged purpose of that statement namely to claim non-fellowship trained Mohs practitioners are inferior and the public is in need of a certification to direct patients to "qualified" surgeons.

Defendants look to *Eli Research, LLC v. Must Have Info Inc.*, 2014 U.S. Dist. LEXIS 127340 (M.D. Fla. Sept. 11, 2014) for support. However, that case is inapposite. In *Eli Research* the plaintiffs did not direct the court to a single statement. Instead, the complaint was

nothing more than a "prime example of a shotgun pleading" that offered no factual support "beyond incorporating their entire preceding 'facts.'" *Id.* at \*23.  By contrast, Plaintiffs pointed the Court directly to a specific set of statements which were false and misleading and identified exactly how those statements were misleading.  Plaintiffs' allegations in the Amended Complaint are not the kind of "naked assertions devoid of further factual enhancement" as those of the *Eli Research* plaintiffs. *Eli Research*, 214 U.S. Dist. LEXIS 127340 at \*23.

Defendants also look to *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281 (11th Cir. 2007) for support.  However, that case dealt with a reservation agreement for a condominium unit.  The purchaser in that case argued that a change in price was a violation of the FDUTPA because of the price listed on the reservation agreement.  However, the reservation agreement clearly stated that it did not constitute a purchase contract and that it made no assurances regarding the price of the condominium unit.  In this case, this Court is dealing with an article published by ACMS and proffered by ABD in its application for sub-certification of Mohs surgery.  The statement:  "You want your skin cancer treatment to be performed with the <u>highest standards of quality and competence</u>" clearly implies that the physicians performing Mohs surgery who are not fellowship trained in Mohs surgery have lower quality standards and lesser competence in performing Mohs surgery procedures than those who are not.  This is to the detriment of Florida consumers as the statement deceives and incentivizes them to find a physician who will charge more for the same service.

<u>RELIEF REQUESTED</u>

Plaintiffs respectfully request the Court enter an Order denying Defendants' Motion for Attorney's Fees and Sanctions.

## VERIFICATION OF MOTION

I, the undersigned, having been duly sworn, do hereby depose and state, the facts stated above are true and I have personal knowledge of the same. This Verified Motion is being filed in good faith and not for the purpose of unnecessary delay.

_____
GEORGE F. INDEST III, J.D., M.P.A., LL.M.
Board Certified by The Florida Bar in the
Legal Specialty of Health Law

## NOTARIZATION

SWORN TO AND SUBSCRIBED before me this 19th day of October 2018, by George F. Indest III, Esquire, who is personally known to me and is the person who signed above.

- SEAL -



_____
NOTARY SIGNATURE
NAME: Paula Alexander
LICENSE NO.: GG 253168
EXPIRATION: 9/10/22

PAULA R. ALEXANDER
MY COMMISSION # GG 253168
EXPIRES: September 10, 2022
Bonded Thru Notary Public Underwriters

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have filed this document electronically with the Clerk of Court via the CM/ECF System, which automatically serves all counsel of record on this 19th day of October 2018.

/s/ George F. Indest
_____
**GEORGE F. INDEST III, J.D., M.P.A., LL.M.**
Florida Bar No.: 382426
Primary e-mail: GIndest@TheHealthLawFirm.com
Secondary e-mail: CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**CAROLE C. SCHRIEFER, J.D.**
Florida Bar No.: 835293
Primary e-mail: CSchriefer@TheHealthLawFirm.com

        Secondary e-mail:  CourtFilings@TheHealthLawFirm.com
        TRIAL COUNSEL/LEAD ATTORNEY
        ATTORNEY TO BE NOTICED
        LANCE O. LEIDER, J.D., LL.M.
        Florida Bar No.:  96408
        Primary e-mail:  LLeider@TheHealthLawFirm.com
        Secondary e-mail:  CourtFilings@TheHealthLawFirm.com
        TRIAL COUNSEL/LEAD ATTORNEY
        ATTORNEY TO BE NOTICED
        THE HEALTH LAW FIRM
        1101 Douglas Avenue
        Altamonte Springs, Florida 32714
        Telephone:  (407) 331-6620
        Telefax:  (407) 331-3030
        ATTORNEYS FOR PLAINTIFFS

GFI/LOL/AAA
S:\001-1699\002\002-ABMS Antitrust Suit\410-Pleadings-Drafts & Finals\Resp. in Opp to Mtn for Sanctions-FINAL.wpd