UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DAVID ALLYN, *et al.*

      Plaintiffs,

      v.

AMERICAN BOARD OF MEDICAL
SPECIALTIES, INC., *et al.*

      Defendants.

Case no. 5:18-cv-00355-JSM-PRL

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
FOR COSTS AND ATTORNEYS' FEES, OR, ALTERNATIVELY,
FOR AN ORDER REQUIRING PLAINTIFFS TO POST A BOND**

Russell LaPeer
**LANDT, WIECHENS, LaPEER,
& AYRES LLP**
Florida Bar no. 200530
445 N.E. 8th Avenue
Ocala, Florida 34470
Telephone No.  (352) 732-8622
Facsimilie No.  (352) 732-1162
rlapeer@aol.com &
lawsec70@yahoo.com

Jack R. Bierig
Benjamin I. Friedman
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone No.  (312) 853-7000
Facsimile No.   (312) 853-7036
jbierig@sidley.com
benjamin.friedman@sidley.com

Admitted *Pro Hac Vice*

**INTRODUCTION**

Defendants American Board of Medical Specialties ("ABMS") and American Board of Dermatology ("ABD") have moved for sanctions under 28 U.S.C. § 1927 and this Court's inherent equitable authority in light of the irresponsible and vexatious litigation tactics of plaintiffs and their counsel.  (Dkt. 33.)  In response, plaintiffs contend that, although "there were certain inaccuracies in the [verified] Complaint which were repeated in the Motion for TRO," no sanctions should be ordered because plaintiffs acted responsibly to correct any misstatements they may have made and because they offered to abate the proceeding until after ABMS acted on ABD's application to offer a subspecialty certificate in Micrographic Dermatologic Surgery ("MDS").  (Dkt. 45 at 4–5.)

Plaintiffs' response cannot justify their conduct.  First, the argument that plaintiffs' false statements—in a *verified* complaint—were "corrected" ignores the fact that plaintiffs did not act until *after* defendants filed their original motion to dismiss—even though defendants had pointed out the basic errors to plaintiffs' counsel and asked that they be corrected in an amended complaint.  Second, the proposed "abatement" was unacceptable because defendants had an obligation under the rules of this Court to respond to the Complaint, and plaintiffs could easily have addressed the situation by dismissing their original complaint without prejudice— as defendants requested.  Finally, the Amended Complaint—which is *also* verified—repeats many of the same false statements that plagued the original one.  Accordingly, defendants respectfully submit that their motion for sanctions be granted.

# ARGUMENT

## I.   Plaintiffs Forced Defendants to Bear the Cost of Filing a Motion to Dismiss a Verified Complaint With Blatantly False Statements.

Plaintiffs make much of the fact that they "voluntarily corrected" the false allegations by filing an Amended Complaint.  (Dkt. 45 at 6.)   But to the extent that there were corrections—and, of course, many false statements remain—plaintiffs forced defendants to bear the cost of filing an unnecessary motion to dismiss *before* correcting them.  Plaintiffs cannot claim that they were unaware of the falsities in the verified Complaint until defendants filed their original motion to dismiss.   To the contrary, this Court identified multiple inaccuracies in its Order denying plaintiffs' request for a temporary restraining order, including (1) the fact that there was *not* going to be an ABMS decision "shortly after July 6, 2018," and (2) the fact that a fellowship would *not* be required for ABD board certified dermatologists— which was the "crux of [plaintiffs] claims in the Verified Complaint."  (Dkt. 5 at 3–5 & n.1.)

Plaintiffs also acknowledged in their July 23, 2018 withdrawal of their motion for preliminary injunction that "Counsel for Defendants [had] advised" that the later, September 11, 2018 committee meeting would result only in "a recommendation for later consideration by ABMS."  (Dkt. 10 at 2.)  And defense counsel had brought to plaintiffs' attention numerous other falsehoods in the original Complaint to which defendants were required to respond.  In other words, plaintiffs had been made fully aware of the failure to investigate basic facts relating to the assertions in their verified Complaint well before they forced defendants to proceed with an August 22, 2018 motion to dismiss.  (Dkt. 21.)  Accordingly, defendants should not have been forced to draft such a motion.

Plaintiffs thus retreat to Rule 15(a)(1)(B), which they say permits their chosen course of conduct.  (Dkt. 45 at 7.)  To be sure, Rule 15(a)(1)(B) permits an amendment without leave after the filing of a motion to dismiss.  However, that Rule does not give plaintiffs license to file a verified complaint replete with false allegations—which plaintiffs *knew* to be false months before any motion to dismiss is filed—and then force defendants to respond to such knowingly false, verified allegations.  Once plaintiffs came to realize, as anyone who had done a responsible investigation would have realized beforehand, that their verified allegations were false, they (and their counsel as officers of the Court) had a responsibility to correct them promptly.  Moreover, Rule 15(a)(1)(A) provided a ready mechanism for doing so: They could have submitted an amended complaint without leave of Court *before* forcing defendants to respond.  Better still, since even their Amended Complaint is unripe and legally unsupportable, plaintiffs could have filed a voluntary notice of dismissal under Rule 41(a)(1)(A).

Instead, plaintiffs chose a course of action that generated needless costs for defendants, who were forced to respond to verified allegations that both the Court and counsel for defendants had told plaintiffs were false.  Only then did plaintiffs amend their pleading, submitting yet another verified complaint—although no verification was necessary—with false assertions, as explained further below.

## II.    Plaintiffs' Proposed Abatement Was Not an Acceptable Substitute for Withdrawal.

Plaintiffs also try to blame defendants for the burdens of having to litigate plaintiffs' baseless claims.  In particular, they say that defendants should have accepted an abatement of the proceedings pending ABMS's decision on the ABD application.  (Dkt. 45 at 5.)  Crucially, however, the proposed abatement would not have solved the fundamental problem with

litigating this case.  Plaintiffs have said from the beginning that they have been injured by events that had not occurred, have not occurred, and may never occur.  As this Court has recognized, ABMS's action on ABD's application to offer a subspecialty certification would *not* force plaintiffs to stop performing Mohs Surgery.  (Dkt. 5 at 4–5.)  Moreover, even after approval of the subspecialty certification, it is highly speculative whether any hospital will ever make an adverse credentialing decision or any payor will refuse to reimburse a Mohs procedure based on plaintiffs' lack of a subspecialty certificate.  There was no ripe, justiciable controversy when this case was filed, and there would be no such controversy the day ABMS granted ABD's application.  And an abatement would have left an unripe complaint, filled with inaccuracies, pending—with no response from defendants.

## III.    Plaintiffs' Amended Complaint Repeats Many of the Inaccuracies of the Original Complaint.

Plaintiffs also attempt to justify their litigation tactics by arguing that their Amended Complaint has cured all of the false allegations in their original complaint.  But the Amended Complaint suffers from many of the very same defects, and even repeats some of the very allegations demonstrably shown to be false from the original Complaint.  For example, although this Court has already explained that experienced dermatologists "would *not* have to complete a fellowship to receive . . . certification, which is the crux of [plaintiffs' claims" (Dkt. 5 at 4–5), plaintiffs' Amended Complaint nonetheless still alleges the following:

> "Under the plan that Defendants are considering, in order to become a member and be certified by the proposed Mohs Surgery subspecialty, a physician would have to . . . have a separate fellowship specifically in Mohs Surgery, . . . [even if that physician] had already completed a residency program in dermatology and was already board certified as a dermatologist [by ABD].

(Dkt. 26 at ¶ 53 & n.4.)  This statement is false, and plaintiffs have been repeatedly told it is false.  There is a practice pathway that would *not* require a separate fellowship.  (Dkt. 5 at 4.) Similarly, the Amended Complaint (like the original one) falsely alleges that the subspecialty certification concerns a single procedure—Mohs surgery—when in fact it is significantly broader.  *Compare* Dkt. 26 at ¶¶ 79, 81, *with see* Application for Subspecialty Certificate, https://www.abms.org/media/182764/application-for-subspecialty-certificate-abd-micrographic-dermatologic-surgery-20180410.pdf (explaining the broad range of knowledge and skills incorporated into the subspecialty).

In addition, although plaintiffs know full well that no subspecialty certification existed at the time of their Amended Complaint, and thus plaintiffs could have suffered no injury— whether as a result of decisions of hospitals or payors—resulting from the existence of a certification, plaintiffs nonetheless allege that they all had *already* "lost substantial income in the form of lost professional fees and have lost patients."  (Dkt. 26 at ¶ 33; *see also id.* at ¶ 13.) They say this in a verified pleading, notwithstanding the fact that the *same* pleading alleges that the downstream effects of any ABMS decision have not yet occurred.  (*See id.* at ¶¶ 36– 38.)

The fundamental problem with plaintiffs' original Complaint is that they brought an antitrust action to obtain relief for asserted injuries that had not yet occurred and might well never occur.  Any reasonable attorney would have done a proper pre-suit investigation of the facts before filing a verified complaint, and any such reasonable investigation would have revealed that there was no ripe, justiciable controversy.  Once both the Court and counsel for defendants explained that the harms plaintiffs feared had not (and likely might never) come to

pass, the appropriate course would have been to dismiss the case voluntarily.  Instead, plaintiffs and their counsel filed yet another verified complaint that asserted demonstrably non-existent harms, and repeated allegations plaintiffs knew to be false.

### CONCLUSION

Defendants respectfully request that this Court sanction plaintiffs and their counsel pursuant to 28 U.S.C. § 1927 and the Court's inherent authority by requiring them to bear defendants' costs and attorneys' fees.  Defendants also respectfully request that the Court order plaintiffs to post a bond under Fla. Stat. § 501.211(3) in the amount of $250,000 if this case proceeds under the FDUTPA.

Dated:  November 12, 2018                              Respectfully submitted,

Russell LaPeer                                        */s/ Jack R. Bierig*
**LANDT, WIECHENS, LaPEER,**                          Jack R. Bierig
**& AYRES LLP**                                       Benjamin I. Friedman
Florida Bar no. 200530                                **SIDLEY AUSTIN LLP**
445 N.E. 8th Avenue                                   One South Dearborn
Ocala, Florida 34470                                  Chicago, Illinois 60603
Telephone No.  (352) 732-8622                         Telephone No.  (312) 853-7000
Facsimile No.  (352) 732-1162                         Facsimile No.   (312) 853-7036
rlapeer@aol.com &                                     jbierig@sidley.com
lawsec70@yahoo.com                                    benjamin.friedman@sidley.com

                                                      Admitted *Pro Hac Vice*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 12, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record in this case.

<div align="center" style="margin-left:40%">

  /s/ Jack R. Bierig
Jack R. Bierig
Benjamin I. Friedman
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone No.  (312) 853-7000
Facsimile No.   (312) 853-7036
jbierig@sidley.com
benjamin.friedman@sidley.com

Admitted *Pro Hac Vice*

</div>