# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Ocala, Florida

DAVID ALLYN, M.D.,
JAMES V. LYNOTT, M.D.,
JOSEPH M. MASESSA, M.D.,
JEFFREY BAUER HORTON, M.D., J.D.,
and MONT JAY CARTWRIGHT, M.D.,                    **No.:**  5:18-cv-355-Oc-30PRL

             Plaintiffs,

vs.

AMERICAN BOARD OF MEDICAL
SPECIALTIES, INC., an Illinois corporation,
and AMERICAN BOARD OF DERMA-            **Sur-Reply in Opposition to Defendants'**
TOLOGY, INC., a Delaware corporation,    **Reply in Support of Their Dispositive**
authorized to do business in Massachusetts,    **Motion to Dismiss the Amended**
                                               **Complaint**

             Defendants.

_____/

## PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' REPLY IN
## SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT [DOC. 51]

### INTRODUCTION

As evidenced by David Allyn, M.D.'s supplemental affidavit [Doc. 50] and Defendants'

Objection to Dr. Allyn's supplemental affidavit [Doc. 53], on October 26, 2018, the American

Board of Medical Specialties, Inc. ("ABMS"), approved the subspeciality for Micrographic

Dermatologic Surgery ("MDS" or "Mohs Surgery").  The creation of the Mohs Surgery

subspeciality is the very fact that the Defendants' have relied upon over and over in their motions

to contend that the issues in this case are not ripe for a determination.  The creation of the Mohs

Surgery subspeciality on October 26, 2018, now completely undercuts the Defendants' arguments. Furthermore, it is the most recent act in a long series of acts and agreements to monopolize the market, as alleged in detail in the Amended Complaint [Doc. 26].

Defendants' argument that Plaintiffs' claims are unripe is now shown to be completely meritless. Plaintiffs filed their original Complaint [Doc. 1] with the specific intention of preventing the creation of the Mohs Surgery subspeciality, which has now been created. The creation of the Mohs Surgery sub-speciality is the next step by the Defendants and the Unnamed Co-conspirators in monopolizing the market.

Defendants also incorrectly claim that even if the Mohs Surgery subspeciality had been created at the time Plaintiffs filed their Amended Complaint, the Amended Complaint would fail to state a claim upon which relief could be granted. Plaintiffs' claims for antitrust violations are sufficiently pleaded. The counts clearly articulate exactly how Defendants' actions are causing harm to the Mohs Surgery market and to the class of Plaintiffs.

Additionally, Defendants again claim that Plaintiffs have not identified deceptive statements made by ABMS or the American Board of Dermatology, Inc. ("ABD"), that would constitute grounds for a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim. However, Plaintiffs have stated, both in the initial Complaint [Doc. 1] and the Amended Complaint [Doc. 26], that ABD's application for the creation of the Mohs Surgery subspeciality included disparaging statements made by the Unnamed Co-conspirator American College of Mohs Surgery ("ACMS"). ABD adopted those comments as its own when it applied for the creation of the subspeciality in Mohs Surgery.

- 2 -

As such, Plaintiffs respectfully request that Defendants' Motion to Dismiss [Doc. 31] this case be denied.

## ARGUMENT

### I.   Plaintiffs' Claims Were Sufficiently Pleaded In Accordance With Article III's Requirements.

In the Amended Complaint, Plaintiffs' claims for violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. Section 1 and 2, as well as violations of Florida's antitrust law, Sections 542.18 and 542.19, Florida Statutes, were pleaded as an ongoing conspiracy to restrict the Mohs Surgery market.  As pleaded, this conspiracy would culminate in the creation of a Mohs Surgery subspeciality.  The conspiracy, however, has been ongoing and continuous for at least the past five (5) years.  And, in fact, the creation of the Mohs Surgery subspeciality, under the exclusive control and authority of Defendant ABD, to the exclusion of all non-board certified dermatologists, has now occurred.

Defendants have selectively mischaracterized Plaintiffs' claims as though they were claims for relief from the creation of a Mohs Surgery subspeciality only.  It is undisputable that on September 10, 2018, when Plaintiffs filed their Amended Complaint, ABMS had not voted and approved the creation the Mohs Surgery subspeciality.  However, Defendants completely ignore the fact that the Amended Complaint states that the conspiracy to restrict the Mohs Surgery market has been ongoing for at least five (5) years, and the ongoing conspiracy is the grounds for violations of both federal and Florida antitrust law.

The claims for an ongoing conspiracy fully satisfy Article III's case-or-controversy requirement.  As demonstrated in *Davis v. FEC*, the Plaintiffs in this case, "had the requisite stake

- 3 -

in the outcome when the suit was filed." *Davis v. FEC,* 554 U.S. 724, 734 (2008). Plaintiffs do not rely on any type of speculation that harm may occur sometime in the future. Plaintiffs allege that the harm has been ongoing for at least the past five (5) years and the conspiracy has culminated in the creation of the Mohs Surgery subspeciality. The harm that Plaintiffs have suffered due to Defendants' ongoing conspiracy is not speculative but actually have occurred and are now very much realized.

Based on the fact that Defendants have engaged in an ongoing conspiracy that has resulted in actual harm to the Plaintiffs, Plaintiffs have sufficiently presented and pleaded their claims for antitrust violations and have appropriately established jurisdiction.

## II.   Plaintiffs' Antitrust Claims Are Justiciable and Our Facially Sufficient.

After claiming that Plaintiffs have insufficiently pleaded jurisdiction, Defendants attempt to argue that Plaintiffs' claims are facially deficient. However, Plaintiffs had appropriately and sufficiently pleaded their claims.

### A.   Plaintiffs Have Alleged Facts that Are Sufficient to Establish Standing Under the Antitrust Laws.

Plaintiffs not only pleaded that they have suffered damages due to Defendants' ongoing conspiracy (which includes the "Unnamed Co-conspirators" who are specifically identified in the Amended Complaint), but also pleaded that the Mohs Surgery market and its consumers have been and will continue to be harmed by the reduction of competitors providing the service. There is no strain on logic or imagination to infer that a reduction of providers of a service in a market will consequently result in higher prices to consumers. These are basic tenets of economics. However, Defendants continue to argue matters that should be obtained and demonstrated through

- 4 -

discovery, not through pleading and a motion to dismiss.

Defendants then deflect the nature of their argument to an entirely different argument that has not been previously raised nor is it relevant to these proceedings.  Defendants claim that Plaintiffs should argue why the exclusion of physicians from a single procedure is more important than exclusion from an entire medical specialty (e.g., dermatology or surgery). [Doc. 51 at 7]. Defendants use this inconsistent analogy to argue that antitrust laws are focused on preserving the benefits of competition for consumers.  Plaintiffs have stated that they have suffered damages; this satisfies the requirement of properly alleging an antitrust claim.

However, Plaintiffs also pleaded that the Mohs Surgery market has and will continue to suffer harm and reduction due to Defendants' conduct.  Specifically, the Amended Complaint alleges that consumers are and will continue to pay higher than normal prices for Mohs Surgery services because of the artificial reduction of the number of providers in the Mohs Surgery market. The injury to the market as well as to consumers is exactly what Plaintiffs stated in the Amended Complaint.

Defendants state in their Motion:

> "Even if plaintiffs had suffered the speculative injuries they identify, such injuries would be multiple steps removed from the challenged conduct."

[Doc. 51 at 8].  It does not matter that the antitrust injury is "multiple steps removed" from the conduct.  What matters is that Defendants have engaged in an ongoing conspiracy that has resulted in different forms of market restriction.  Defendants argue that they should remain blameless based on the illusory principle that because their conduct is not direct, it is protected.  There is no basis

for such a line of reasoning anywhere.  Section 1 of the Sherman Act states:

> Every contract, combination in the form of trust or
> otherwise, or conspiracy, in restraint of trade or
> commerce among the several States, or with foreign
> nations, is hereby declared to be illegal.

15 U.S.C. § 1.  Section 2 of the Sherman Act states:

> Every person who shall monopolize, or attempt to
> monopolize, or combine or conspire with any other
> person or persons, to monopolize any part of the
> trade or commerce among the several States, or with
> foreign nations, shall be deemed guilty of a felony.

15 U.S.C. § 2.  Nowhere does the statute make a distinction of remoteness or directness.

Defendants' argument is that they should be allowed to do indirectly what they are prohibited from

doing directly, a legal fallacy.  As such, Defendants' arguments remain unpersuasive.

### B.    Plaintiffs Allege Facts That Are Sufficient to Establish Actual Restraint of Trade.

Defendants attempt to argue that Plaintiffs have not alleged sufficient facts to establish a

claim for restraint of trade; however, Defendants only discuss the facts of other cases with facts

dissimilar to the present one.  When looking within the four corners of the Amended Complaint,

it is clear that Plaintiffs have alleged many facts that support an antitrust claim.

Defendants point to *Schachar v. American Academy of Opthalmology* to present themselves

as defenders of free speech.  Defendants state: "An organization's towering reputation does not

reduce its freedom to speak out."  *Schachar v. American Academy of Opthalmology,* 870 F.2d

397, 399 (7th Cir. 1989).  Plaintiffs are not concerned with Defendants' free speech.[1]  Again, this

---

[1]    Plaintiffs do disagree with Defendants' attempt to conflate and inflate their own reputations, however.

- 6 -

is a case of an antitrust conspiracy resulting in the restriction of the Mohs Surgery market. Defendants are free to publish their opinions in accordance with free speech; however, this does not give them unfettered permission to impact the market in whatever ways they wish. It also does not give them unfettered permission to make unfair and deceptive statements which confuse the public.

In *N.C. Board of Dental Examiners*, the Supreme Court clearly stated: "active market participants cannot be allowed to regulate their own markets free from antitrust accountability [sic]." *N.C. State Bd. of Dental Exam'rs v. FTC,* 135 S.Ct. 1101, 1111 (2015). As such, Defendants cannot hide behind the defense of free speech. ABMS and ABD are organizations made up of physicians who regulate other physicians. To claim that free speech protects their actions, even when those actions create antitrust injuries, is contrary to the Supreme Court's ruling.

**C.    Plaintiffs' Claims Are Not Barred by the *Noerr-Pennington* Doctrine.**

Defendants claim that their lobbying efforts are protected by the First Amendment and that the *Noerr-Pennington* doctrine protects Defendants' efforts to lobby government agencies and officials. However, the Supreme Court specifically held that when:

> "an economically interested party exercises decisionmaking [sic] authority in formulating a product standard for a private association that comprises market participants, that party enjoys no *Noerr* immunity from any antitrust liability flowing from the effect the standard has of its own force in the marketplace."

*Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S. 492, 509-510 (1988). As such, Defendants remain fully liable for their anticompetitive and antitrust actions because they are

- 7 -

economically interested private corporations that are comprised of market participants who are formulating a product standard.  As such, Defendants' lobbying efforts are not shielded by the First Amendment nor the *Noerr-Pennington* doctrine and Defendants are liable for the ongoing antitrust conspiracy's results.

> **D.     Plaintiffs' Claims Challenging Actions Taken Prior to 2014 Are Not Barred by the Statute of Limitations.**

As was established in *Omni Healthcare, Inc. v. Health First, Inc.*, the Middle District of Florida "agreed with plaintiff's assertion that it was entitled to recover damages caused by the defendants' continuation of the alleged monopoly and conspiracy that such actions should be treated 'as a continuing series of acts upon which successive causes of action may accrue'." *Omni Healthcare Inc. v. Health First, Inc.*, No. 6:13-cv-1509-Orl-37DAB, 2016 U.S. Dist. LEXIS 107277, at *32 and 33 (M.D. Fla. Aug. 13, 2016) (quoting *Poster Exchange, Inc. v. National Screen Service Corporation*, 517 F.2d 117, 124-125 (5th Cir. 1975)).  In the present case, Plaintiffs have stated that Defendants have been engaged in an ongoing conspiracy for a number of years.  As such, the actions of the ongoing conspiracy remain relevant to the anticompetitive and antitrust results experienced within the statute of limitations period.

In addition, in Omni Healthcare, the court also concluded that, "binding authority 'la[id] to rest the theory that . . . suit upon a continued antitrust violation must be prosecuted from the first act of illegality (plus, of course, any period during which the limitations period was tolled.)'" *Omni Healthcare Inc.*, U.S. Dist. LEXIS 107277 at *33 (quoting *Poster Exchange*, 517 F.2d at 126).  Therefore, Defendants' argument remains unpersuasive and Plaintiffs' claims remain sufficiently pleaded as to Defendants' ongoing conspiracy.

III.   **Plaintiffs Have Identified a Number of False or Deceptive Statements Made by Defendants and Have Sufficiently Stated a Claim Under the FDUTPA.**

Again, Defendants have attempted to distance themselves from their own actions claiming that the comments made by Unnamed Co-conspirator ACMS, which are incorporated into ABD's application for subspeciality, were not made by Defendants themselves.  However, the FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Molina v. Aurora Loan Servs.*, LLC, 635 F. App'x 618, 626 (11th Cir. 2015) (quoting Fla. Stat. § 501.204(1)).  ABD engaged in unfair or deceptive acts or practices when they incorporated the disparaging statements made by Unnamed Co-conspirator ACMS in its application for subspeciality.  See, also, the Supplemental Affidavit of David Allyn, M.D. [Doc. 50], incorporated herein by reference.

As such, ABD is responsible for the consequences of those statements that it chose to adopt in its application for subspeciality.

## CONCLUSION

Plaintiffs respectfully request this Court to deny Defendants' Dispositive Motion to Dismiss the Amended Complaint [Doc. 26].

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have filed this document electronically with the Clerk of Court via the CM/ECF System, which automatically serves all counsel of record, on this 26th day of November 2018.

/s/ George F. Indest III
_____

- 9 -

**GEORGE F. INDEST III, J.D., M.P.A., LL.M.**
Florida Bar No.: 382426
Primary e-mail: GIndest@TheHealthLawFirm.com
Secondary e-mail: CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**LANCE O. LEIDER, J.D., LL.M.**
Florida Bar No.: 96408
Primary e-mail: LLeider@TheHealthLawFirm.com
Secondary e-mail: CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**THE HEALTH LAW FIRM**
1101 Douglas Avenue
Altamonte Springs, Florida 32714
Telephone: (407) 331-6620
Telefax: (407) 331-3030
**ATTORNEYS FOR PLAINTIFFS**

GFI/LOL/AAA/pa
S:\001-1699\002\002-ABMS Antitrust Suit\410-Pleadings-Drafts & Finals\Surreply- Motion to Dismiss- rev3.wpd