UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**DAVID ALLYN, M.D., JAMES V. LYNOTT, M.D., JOSEPH M. MASESSA, M.D., JEFFREY BAUER HORTON, M.D., J.D., and MONT JAY CARTWRIGHT, M.D.,**

    Plaintiffs,

v.                                    Case No: 5:18-cv-355-Oc-30PRL

**AMERICAN BOARD OF MEDICAL SPECIALTIES, INC. and AMERICAN BOARD OF DERMATOLOGY, INC.**

    Defendants.

### REPORT & RECOMMENDATION[1]

In this antitrust case, Defendants, the American Board of Medical Specialties, Inc., (AMBS) and the American Board of Dermatology, Inc., (ABD) have filed a motion to dismiss the amended complaint against them. (Doc. 31). They also seek, by separate motion, to recover their attorney's fees and costs. (Doc. 33). Plaintiffs have opposed both motions, (Doc. 43, 45), to which Defendants have replied, (Doc. 51, 52), and Plaintiffs have sur-replied. (Doc. 60, 61). Both motions are now ripe. On referral from the district judge and after review, it is recommended that Defendants' motion to dismiss be granted while Defendants' motion for sanctions be denied.

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**I.     BACKGROUND[2]**

Plaintiffs are medical doctors who routinely perform a procedure called "micrographic dermatologic surgery"—better known as Mohs surgery. According to the amended complaint, Mohs surgery is used for the treatment of skin cancer and involves removing a thin layer of skin from around the cancer and analyzing the tissue to determine whether any cancer cells remain. (Doc. 26 ¶44). The surgeon repeats the process of cutting and analyzing until she determines that all the cancer has been removed. (Doc. 26 ¶45).

Plaintiffs allege that the procedure is safe, effective and can be performed in a physician's office under local anesthetic. (Doc. 26 ¶46). Currently, the procedure is taught as part of a dermatological residency program but may also be performed by general surgeons, oncologists, plastics surgeons, and other specialists. (Doc. 26 ¶47).

Defendant ABMS is an umbrella organization of twenty-four medical specialty boards. (Doc. 26 ¶16). ABD is one such medical specialty board for the practices of dermatology, dermapathology, and pediatric dermatology. (Doc. 26 ¶19). Together Defendants set standards for certification in each specialty and subspecialty, including training and examination requirements. (Doc. 26 ¶17). Obtaining certification is important to doctors because lacking a certification can limit a doctor's ability to be reimbursed for services and force doctors to accept lower reimbursement rates.

Plaintiffs are doctors of different specialties who all perform Mohs surgery regularly. (Doc. 26 ¶¶ 2–13). None of the Plaintiffs has completed a fellowship, and while several of the Plaintiffs may be eligible for certification if they passed the certification exam, under a limited exception for

---

[2] At this stage in the proceedings, the facts alleged in the complaint are accepted as true and construed in the light most favorable to the plaintiff. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010).

certified dermatologists, at least two of the Plaintiffs would not be eligible for certification without completing a fellowship. (*Id.*). Plaintiffs allege that a subspecialty in Mohs surgery is not necessary given that the procedure has been widely used for many years and is relatively simple and safe. (Doc. 26 ¶¶46, 109–11). They allege that the actual purpose of the subspecialty is to restrict the supply of medical doctors performing Mohs surgery in order to limit competition and ensure higher reimbursement rates for certified doctors. (Doc. 26 ¶74).

Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b), arguing that Plaintiffs' claims are not justiciable at this time and that Plaintiffs have failed to state a claim on which relief can be granted. (Doc. 31). They have also sought attorney's fees and costs under 28 U.S.C. § 1927 or, alternatively, an order that Plaintiffs post a bond under § 502.211(c), Florida Statutes.

## II.   LEGAL STANDARD

The bare minimum a plaintiff must set forth in his complaint is found in Fed. R. Civ. P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R. Civ. P. 8, as it is under Fed. R. Civ. P. 9, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*. First, the court will "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n*, 605 F.3d at 1290. Then, "where there are well-pleaded factual allegations," the court will "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8 (and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682).

### III. DISCUSSION

Defendants make five arguments in their motion to dismiss: (1) Plaintiffs' claims based on the Mohs subspecialty are not ripe because the subspecialty did not exist at the time the complaint was filed; (2) Plaintiffs lack antitrust standing; (3) Plaintiffs have failed to state a claim under the

antitrust laws; (4) Plaintiffs' claims are barred by the *Noerr-Pennington* doctrine and the statute of limitations; and (5) Plaintiffs have failed to state a claim under the Florida Deceptive and Unfair Trade Practices Act (FDUPTA).

### A. Ripeness of Antitrust Claims

The doctrine of ripeness, like the related justiciability doctrine of standing, "involves consideration of both constitutional and prudential concerns." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1224 (11th Cir. 2004). The doctrine is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* (quoting *Abbott Labs v. Gardener*, 387 U.S. 136, 148 (1967)). Ripeness is meant to prevent the courts from adjudicating "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580–81 (1985).

The primary considerations in determining whether a claim is ripe for review are: (1) "the fitness of the issues for judicial decision" and 2) "the hardship to the parties of withholding court consideration." *Id.* In applying the "fitness" and "hardship" prongs, the Court must consider: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). Whether a justiciable case or controversy exists is assessed at the time of the filing of the complaint. *See Davis v. FEC*, 554 U.S. 724, 734 (2008); *Atl. Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414–15 (11th Cir. 1995).

Defendants contend that this dispute was not ripe at the time of the filing of the complaint as the subspecialty in Mohs surgery had not yet been created.[3] Plaintiffs do not dispute that the relevant timeframe for assessing the ripeness of this dispute is the filing of the complaint. (Doc. 60, p. 3). They also acknowledge, as they must, that at the filing of the complaint there was no actual subspecialty. Instead, Plaintiffs argue their claims are ripe because Defendant ABMS "almost universally accepts" recommendations for subspecialties and the creation of the subspecialty was "almost a foregone conclusion." (Doc. 43, p. 3). Plaintiffs maintain, as well, that the dispute is ripe because they allege an on-going conspiracy over the last five years—the creation of the subspecialty being merely the culmination of that conspiracy.[4]

The fact that the subspecialty in Mohs surgery did not exist at the time of the filing creates an obvious challenge for judicial review. The subspecialty might never have come into being or might have been designed in such a way as to not significantly restrain trade. *See Staver v. Am. Bar Ass'n*, 169 F. Supp. 2d 1372, 1377 (M.D. Fla. 2001) (finding claim for injunctive relief not ripe where defendant had not made a final determination on plaintiff's application for accreditation). Thus, the fact that the certification did not even exist at the time of filing weighs against ripeness.

---

[3] It appears that the subspecialty has been created since the complaint was filed. *See* Am. Bd. of Dermatology, *MDS Subspecialty Certification Approved*, https://www.abderm.org/public/announcements/mds-subspecialty-certification-approved.aspx (last visited Dec. 3, 2018).

[4] Plaintiffs also argue, with little explanation, that Defendants' argument actually sounds in mootness but that their claim fits into an exception to the normal requirements of mootness for actions "capable of repetition yet evading review." *See, e.g.*, *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 603 (1982). It is unclear, however, how Defendants following established procedures for approving new certifications is an attempt to moot the case. Plaintiffs have not provided a justification for believing that were an actual restraint on trade adopted and implemented, that restraint would somehow escape judicial review.

In addition, even if the subspecialty were in place at the time of the filing of the complaint, Plaintiffs' complaint depends on some additional enforcement action being taken by Defendants or by third parties to actually restrict the supply of Mohs surgery.

ABMS and ABD are voluntary, non-profit organizations that certify doctors in certain medical specialties. (Doc. 24 ¶¶16, 19). Generally, voluntary certification creates fewer harms to competition than more restrictive licensing practices since non-certified providers can continue to offer their services even without the certification. *See Poindexter v. Am. Bd. of Surgery, Inc.*, 911 F. Supp. 1510, 1519–20 (N.D. Ga. 1994) (recognizing that certification standards can enhance consumer welfare and serve the public interest).[5]

Plaintiffs allege that despite the voluntary nature of the certification, Defendants are able, in practice, to restrict the supply of doctors who perform any given procedure through their certification requirements by conspiring with third-party payors to limit reimbursement for Mohs surgery to only certified physicians. But, at this point, Defendants' ability to actually harm competition with their certification requirements is largely speculative.

While the complaint alleges that the existence of the subspecialty will cause third parties to rewrite their coverage determinations "to require that a physician can only be paid for a Mohs Surgery procedure if he or she is certified in the Mohs Surgery subspecialty," these changes have not occurred as of the time of the filing of complaint and are not certain to ever occur. (Doc. 24 ¶93–97). Indeed, as the complaint acknowledges, reimbursement decisions are made by a variety of federal, state, and private entities each with independent authority. (Doc. 26 ¶¶94–96). Whether

---

[5] *See also generally* FTC & Dep't of Justice, *Improving Health Care: A Dose of Competition*, (July 2004), *available at* https://www.ftc.gov/sites/default/files/documents/reports/improving-health-care-dose-competition-report-federal-trade-commission-and-department-justice/040723healthcarerpt.pdf (explaining that generally certification requirements pose fewer risks to competition than mandatory licensing requirements).

some or all of these entities will change their reimbursement decisions in a way that harms Plaintiffs is an open question.

Given that Plaintiffs' complaint depends upon uncertain conduct yet to occur, including the actual creation of the subspecialty which hadn't been created at the time the complaint was filed, Plaintiffs alleged harms are speculative at this point and, therefore, not fit for review. *See Pittman v. Cole*, 267 F.3d 1269, 1278 (11th Cir. 2001) (noting that claims are less likely to be fit for adjudication where they require "speculation about contingent future events").

Even if the Court were to concede that such harms are likely to occur, Plaintiffs have not addressed why judicial review would not be aided by withholding review until the alleged anticompetitive practices are actually put into place so that the dispute would be based on a concrete policy. *See Ohio Forestry*, 523 U.S. at 736 (noting that advantages to judicial review of factual components "fleshed out by some concrete action"). Moreover, Plaintiffs have not shown what hardship would come to them from delaying review, especially given that it appears possible that some implementation period will follow any new certification and the proposed certification includes a period of time where doctors who practice Mohs surgery can become certified without completing a fellowship. (Doc. 26 ¶¶ 104–06). *See Midrash*, 366 F.3d at 1224.

Plaintiffs' antitrust claims are, therefore, not ripe and due to be dismissed. Accordingly, the Court need not determine at this time whether Plaintiffs have antitrust standing or whether the *Noerr-Pennington* doctrine applies. However, the fact that additional threshold concerns exist in this case only strengthens the Court's conclusion that Plaintiffs' claims would be better served by waiting for a more concrete dispute with a developed factual record.

### B. Plaintiffs' Failure to State a Claim

Alternatively, even if the claims were ripe, Plaintiffs' allegations fail to state a claim on which relief may be granted. Plaintiffs allege claims under §§ 1 and 2 of the Sherman Antitrust Act as well as the Florida Antitrust laws.[6] Plaintiffs have also asserted a claim under the Florida Unfair and Deceptive Trade Practices Act. The Court will address each claim in turn.

#### 1. *Plaintiffs' Antitrust Claims*

To state a claim for a violation of § 1 of the Sherman Act, Plaintiffs must allege the existence of an unreasonable contract, combination, or conspiracy to restrain trade. *See, e.g.*, *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). But the mere existence of a restraint on trade is not sufficient to state a claim. Instead, plaintiffs must demonstrate that the alleged contract or combination has an anticompetitive effect. *Id.*

Plaintiffs here have failed to allege an actual restraint on trade or an anticompetitive effect. First of all, the section of the complaint that purports to set out the restraint on trade references actions of both Defendants and several "unnamed co-conspirators" without alleging what specific actions were taken by Defendants themselves that violated the antitrust laws. (Doc. 26 ¶¶98–106). *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (describing requirement that the complaint gives defendants adequate notice of the claims against them).

---

[6] The text of Florida Antitrust Act contains similar language as the federal Sherman Act and "Federal and Florida antitrust laws are analyzed under the same rules and case law." *All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 n.11 (11th Cir. 1998). Plaintiffs have not identified any difference between federal law and Florida law on these issues. Accordingly, the Court will analyze the federal and Florida antitrust claims under the same principles. *See, e.g.*, *AT&T Mobility LLC v. Phone Card Warehouse, Inc.*, No. 6:08-cv-1909, 2009 WL 10671270, at *2 n.1 (M.D. Fla. June 25, 2009) (analyzing Florida and federal antitrust claims under the same standards).

While the complaint states in a conclusory manner that Defendants will "unreasonably restraint trade" and are intended to "exclude from the relevant market dermatologists and other Mohs Surgery physicians," the complaint does not allege that Defendants have actually prevented Plaintiffs from seeking reimbursement for their services from patients and third-party payors or that Plaintiffs' business has been adversely affected. (Doc. 26 ¶¶ 160–63). Nor does the complaint allege that Defendants have engaged in anticompetitive practices aimed at preventing non-certified physicians from performing Mohs surgery such as a group boycott or denial of essential facilities. *Cf. N.C. State Bd. of Dental Examiners v. FTC*, 135 S.Ct. 1101 (2015) (affirming judgment against board of dentists who abused their authority to regulate dentistry by sending non-dentists who offered teeth whitening services cease-and-desist letters and implying criminal charges may follow if they continued to engage in such practices).[7]

Plaintiffs' allegations that Defendants' conduct "constitutes an unlawful tying agreement" is conclusory and unsupported by allegations demonstrating that Defendants have engaged in "forcing." *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 13–14 (1984). In fact, it is not clear from the complaint what two separate products are allegedly being tied together. (Doc. 26 ¶¶ 164–66).

Further, there is no allegation that Defendants have the power to prevent Plaintiffs from performing Mohs surgery or are engaged in activity designed to exclude Plaintiffs from providing their services beyond using their reputation to encourage third parties to seek out fellowship-trained and certified physicians. *See See Schachar v. Am. Academy of Ophthalmology, Inc.*, 870 F.2d 397 (7th Cir. 1989) (finding actions by association of ophthalmologists to label a procedure

---

[7] Notably, unlike the defendants in *Board of Dental Examiners*, Defendants here are not a state regulatory board with the power to set rules that have the force of law. *See* 135 S. Ct. at 1107–08 (describing the regulatory power of the board).

"experimental" did not constitute a restraint of trade where the group had no authority to enforce their determinations). Absent allegations of actual anticompetitive practices or substantial market power used for self-dealing, Plaintiffs cannot state a plausible claim for relief. *Cf. Am. Soc'y of Mech. Eng'r, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 570–71 (1982) (recognizing that standards setting organization can be liable under the Sherman Act where the organization "wields great power in the Nation's economy").

Likewise, Plaintiffs' claims under § 2 of the Sherman Act fail. To state a claim under § 2, Plaintiffs must show "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

Plaintiffs allegations with regard to their § 2 claim recite only the unsupported legal conclusion that "Defendants and Unnamed Co-conspirators are attempting to monopolize . . . the medical service Mohs surgery." (Doc. 26 ¶173). Plaintiffs have failed to allege "a dangerous probability of achieving monopoly power" given that many of the supposed anticompetitive practices have not yet occurred and non-certified physicians will still be able to offer Mohs surgery. In addition, there are insufficient factual allegations to show that Defendants have engaged in predatory or anticompetitive behavior when, as discussed above, Defendants do not control the consequences of their credentialing decisions, and there is no allegation that they have yet used their influence improperly.

    2. *Plaintiffs' FDUTPA Claim*

FDUTPA makes unlawful: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. To state a claim under the FDUTPA, a plaintiff must allege "(1) a deceptive

act or unfair trade practice, (2) causation, and (3) actual damages." *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 626–27 (11th Cir. 2015). "A deceptive act or practice is one likely to mislead the consumer acting reasonably under the circumstances, to the consumer's detriment." *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016).

Defendants maintain that Plaintiffs have failed to identify in their complaint an actual statement made by them that was deceptive. Plaintiffs' complaint references statements made on Defendants' website and attached as Exhibits 1 and 2. (Doc. 26-2, 26-3). Exhibit 1 contains the text, "Why Choose a Fellowship Trained Mohs Surgeon?", and then states: "You want your skin cancer treatment to be performed with the highest standards of quality and competence." (Doc. 26-2). The Exhibit then explains that fellowship trained physicians are required to have "at least one full year of training and hands-on experience provided by highly qualified instructors after completing their years of residency training." (Doc. 26-2). Plaintiffs contend this statement implies that physicians not fellowship trained "have lower quality standards and lesser competence in performing Mohs surgery." (Doc. 26 ¶56).

First of all, both statements identified in the complaint were actually made not by Defendants but rather by the American College of Mohs Surgery, which Plaintiffs describe as an "un-named co-conspirator." Plaintiffs maintain that the statements can be attributed to Defendants because the statements were included in Defendants' application to create the subspecialty in Mohs surgery. (Doc. 26 ¶59). However, Plaintiffs have provided no support for the proposition that parties can be liable for deceptive statements made by another.

Even if this were the case, Plaintiffs have not alleged facts that would demonstrate the statements were deceptive. The statement in Exhibit 1 merely informs consumers of the fact that

the ACMS "requires its members to have successfully completed a fellowship that requires at least one full year of training and hands-on experience by highly qualified instructors." (Doc. 26-2). Plaintiffs do not dispute that this is a true statement. The statement does not necessarily imply, as Plaintiffs allege, that all non-certified Mohs surgeons are of a lower quality. The statement merely correctly states that certified physicians have a certain amount of guaranteed specialized training.

The other allegedly deceptive statements in Exhibit 1 refer only to Mohs surgery in general and not to fellowship-trained physicians in particular. These statements, likewise, fail to support Plaintiffs allegations that Defendants are deceiving consumers as to the quality of non-certified Mohs providers. (Doc. 26-2).

Finally, Exhibit 2 contains the allegedly deceptive statement: "The ACMS serves as the voice of the specialty, promoting and advancing the highest standards of patient care, through fellowship training, research, education, and public advocacy." (Doc. 26-3). Plaintiffs allege this statement is deceptive because Mohs surgery is not a specialty. (Doc. 26 ¶57). But nowhere do Plaintiffs explain how this statement would impact consumers.

Plaintiffs remaining claims are derivative of the proceeding claims. Plaintiffs' claim for civil conspiracy (Count VI) is "not a freestanding tort." *SFM Holdings, Ltd v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1339 (11th Cir. 2014). Plaintiffs' requests for declaratory relief (Count VII) and injunctive relief (Count VIII) are merely alternative remedies and not separate causes of action. *See, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

Accordingly, Plaintiffs' complaint fails to state a claim on the basis of which relief could be granted and is due to be dismissed.

### C. Defendants' Motion for Sanctions

The final issue is Defendants' separate motion for sanctions. (Doc. 33). Defendants move for sanctions under 28 U.S.C. § 1927 and the Court's inherent power to sanction. As an initial matter, it appears § 1927 sanctions are not available for initial pleadings. *See Macort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006). Even if § 1927 sanctions were available, the fact that sanctions are being sought early in the proceedings strongly weighs against awarding sanctions as § 1927 sanctions are available only against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." *See Macort*, 208 F. App'x at 785–86 (explaining that § 1927 sanctions require a showing of "(1) unreasonable and vexatious conduct; (2) such that the proceedings are multiplied; and (3) a dollar amount of sanctions that bears a financial nexus to the excess proceedings" and explaining that all three elements must be present to award sanctions). Accordingly, even if § 1927 sanctions were available against Plaintiffs, Defendants have not shown that the proceedings were multiplied given the early stage of the litigation.

As to inherent authority sanctions, it is well established that a court has the discretion to sanction a party that acted "in bad faith, vexatiously, wantonly or for oppressive reasons." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). In determining whether bad faith exists, the court must make "specific findings as to the individual's conduct that warranted sanctions." *Wachovia Bank v. Tien*, 406 F. App'x 378, 383 (11th Cir. 2010). "The court's inquiry should focus primarily on the individual's conduct and motive, rather than the validity of the case." *Id.*

Defendants' primary argument is that several of the allegations made in the complaint are false. Specifically, Defendants emphasize that the initial complaint represented that Defendants would make a decision on the subspecialty soon after June 6, 2018 and did not acknowledge that the Plaintiffs would likely qualify for admittance into the certification as practicing physicians. As Plaintiffs point out, however, they remedied many of these allegations in the amended complaint, including clarifying that the subspecialty would be voted on in October 2018 and adding Defendants who would not be eligible for the practice exception. (Doc. 26 ¶¶11–12, 83).

Although, as discussed above, Plaintiffs' factual allegations are largely insufficient to state a claim, Defendants have not demonstrated, at this time, that Plaintiffs have engaged in bad-faith conduct. Accordingly, the motion for sanctions is due to be denied.

IV. **RECOMMENDATION**

Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss (Doc. 31) be **granted** and that Defendants' motion for sanctions be **denied**. (Doc. 33).

**Recommended** in Ocala, Florida on January 3, 2019.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy